RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 21a0065p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

No. 20-5755

LAZELLE MAXWELL,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Eastern District of Kentucky at Covington.
No. 2:09-cr-00033-2—Danny C. Reeves, District Judge.

Decided and Filed:  March 19, 2021

Before:  GUY, SUTTON, and GRIFFIN, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:**  Alison K. Guernsey, UNIVERSITY OF IOWA COLLEGE OF LAW, Iowa City, Iowa, for Appellant.  Charles P. Wisdom, Jr., John Patrick Grant, UNITED STATES ATTORNEY'S OFFICE, Lexington, Kentucky, for Appellee.  Henry A. Martin, Michael C. Holley, FEDERAL PUBLIC DEFENDER'S OFFICE, Nashville, Tennessee, Stephen Ross Johnson, RITCHIE, DILLARD, DAVIES & JOHNSON, PC, Knoxville, Tennessee, Elizabeth B. Ford, Jennifer Niles Coffin, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., Knoxville, Tennessee, for Amici Curiae.

_____

## OPINION

_____

SUTTON, Circuit Judge.  Lazelle Maxwell moved for a discretionary sentence reduction under the First Step Act.  The district court declined Maxwell's request, opting to leave his

thirty-year sentence in place.  Maxwell contends that the court abused its discretion.  It did not, and we affirm.

## I.

In 2008, a federal grand jury in Lexington, Kentucky indicted Lazelle Maxwell for conspiring to distribute crack cocaine and heroin.  *See* 21 U.S.C. § 846.  A jury found Maxwell guilty of both counts.

In sentencing Maxwell, the district court accurately determined that the crack-cocaine offense at the time generated a statutory range of 20 years to life and that the heroin offense generated a range of 10 years to life, 21 U.S.C. § 841(b)(1)(A)–(B).  Under the 2009 edition of the guidelines, the district court treated Maxwell as a career offender and calculated a discretionary guidelines range of 30 years to life.  U.S.S.G. § 4B1.1.  It sentenced Maxwell to 30 years.

While Maxwell's direct appeal was pending, Congress enacted the Fair Sentencing Act of 2010.  In an effort to increase parity between the sentences for crack and powder cocaine offenses, Congress increased the quantity of crack cocaine needed to trigger a ten-year mandatory minimum sentence from 50 grams to 280 grams.  Fair Sentencing Act of 2010, Pub. L. No. 111-220, § 2(a)(1), 124 Stat. 2372, 2372 (2010) (amending 21 U.S.C. § 841(b)(1)(A)(iii)).  But the change did not help Maxwell because it did not apply to sentences imposed before the Act.  *See United States v. Blewett*, 746 F.3d 647, 650 (6th Cir. 2013) (en banc).

In appealing his conviction and sentence, Maxwell sought relief on the grounds that his pre-trial identification should have been suppressed, that the subsequent in-court identifications should not have been permitted, and that insufficient evidence linked him to the crime.  Maxwell and his co-defendant also argued that their sentences were substantively unreasonable.  Each claim fell short.  *United States v. Shields*, 415 F. App'x 692, 704–05 (6th Cir. 2011).

Maxwell sought collateral relief on ineffective-assistance-of-counsel grounds.  *See* 28 U.S.C. § 2255.  Although the district court denied the motion, we ruled that his trial attorney violated Maxwell's Sixth Amendment right to counsel when he failed to argue that the two

conspiracy counts were multiplicitous. *Maxwell v. United States*, 617 F. App'x 470, 472–73 (6th Cir. 2015).

On remand, the district court vacated Maxwell's heroin conviction and imposed a thirty-year sentence on the cocaine conviction alone, leaving his total sentence unchanged. We affirmed. *United States v. Maxwell*, 678 F. App'x 395, 397 (6th Cir. 2017).

In 2018, Congress enacted the First Step Act, which empowers district courts to lower sentences imposed for crack-cocaine offenses "as if" the 2010 Fair Sentencing Act (and its lowering of the sentence for this cocaine offense) had been the law during the original sentencing hearing. First Step Act of 2018, Pub. L. No. 115-391, § 404(b), 132 Stat. 5194, 5222 (2018). Maxwell mailed a one-page letter to the district court, asking about relief under the First Step Act. The district court construed the letter as a request for relief under the Act and denied it. *United States v. Maxwell*, No. CR 2:09-033-DCR, 2019 WL 1320045, at *4–5 (E.D. Ky. Mar. 22, 2019). We reversed the ruling on the ground that Maxwell sought appointment of counsel, not a merits review, at that point in the case. *United States v. Maxwell*, 800 F. App'x 373, 376 (6th Cir. 2020).

On remand, and with the assistance of counsel, Maxwell moved for a sentence reduction under the First Step Act. The district court denied his motion and left the thirty-year sentence in place. *United States v. Maxwell*, No. CR 2:09-033-DCR, 2020 WL 3472913, at *4 (E.D. Ky. June 25, 2020).

## II.

The appeal raises two questions: Does the First Step Act demand a plenary resentencing of a defendant that accounts for all changes in the law since his original sentence? Even if that is not the case, does the Act permit a district court in its discretion to consider intervening legal developments, such as changes in the career-offender guidelines, in determining the extent of any sentence reduction?

A.

The text of the legislation goes a long way to answering the first question. The First Step Act says in pertinent part:

> A court that imposed a sentence for a covered offense may, on motion of the defendant, . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act . . . were in effect at the time the covered offense was committed.

First Step Act, § 404(b). A "covered offense" amounts to one affected by the former disparity between sentences imposed for crack and powder cocaine offenses—what the Act refers to as a "Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act . . . that was committed before August 3, 2010." *Id.* § 404(a). The upshot is that the Act gives a district court authority to reduce a defendant's sentence retroactively to account for the changes established by the Fair Sentencing Act. But that authority is discretionary. "Nothing" in the Act "shall be construed to require a court to reduce any sentence." *Id.* § 404(c).

With this legislation, Congress created an exception to the conventional rule that a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). An exception to that rule says that a "court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute." *Id.* § 3582(c)(1)(B). Taken together, § 3582(c) and the First Step Act "expressly permitted" the district court to lower Maxwell's sentence in its discretion.

None of this seems to divide the United States and Maxwell. What separates them is a disagreement over what the district court must do before making that decision. As Maxwell sees it, the district court must engage in a plenary resentencing, one that recalculates the advisory guidelines range according to the law at the time of the request, here the law in 2020. In Maxwell's case, that new calculation would have accounted for subsequent changes in other areas of the law since his 2010 sentencing, including changes to his career-offender designation.

Efforts to rewrite the past are not easy. And we appreciate the appeal of Maxwell's argument that we should account for the present in redoing the past. But that is not what the

First Step Act requires, at least not at the outset when determining the guidelines range that will form the basis for the reduced sentence. It tells the court to alter just one variable in the original sentence, not all variables. It asks the court to sentence Maxwell "as if" the crack-cocaine sentencing range had been reduced under the Fair Sentencing Act of 2010, not as if other changes had been made to sentencing law in the intervening years.

We have considerable company in following the relevant language—the Act's "as if" directive and § 3582(c)'s prohibition on modifying sentences unless "expressly permitted"—to its natural end. Several circuits have rejected the idea that a First Step Act request requires the trial court to engage in a plenary resentencing hearing. From their vantage point, the district court looks to the law as it existed at the time the defendant committed the offense, save for one change: the Fair Sentencing Act's amendments. That's the reasoning of the Ninth Circuit: "Because the First Step Act asks the court to consider a counterfactual situation where only a single variable is altered, it does not authorize the district court to consider other legal changes that may have occurred after the defendant committed the offense." *United States v. Kelley*, 962 F.3d 470, 475 (9th Cir. 2020) (refusing to account for changes in career-offender precedents). And the reasoning of the Fifth Circuit: "Congress did not intend that other changes were to be made as if they too were in effect at the time of the offense." *United States v. Hegwood*, 934 F.3d 414, 418 (5th Cir. 2019). And the reasoning of the Eleventh Circuit: "[T]he district court . . . is not free to . . . reduce the defendant's sentence on the covered offense based on changes in the law beyond those mandated by sections 2 and 3 [of the Fair Sentencing Act]." *United States v. Denson*, 963 F.3d 1080, 1089 (11th Cir. 2020). And the reasoning of the Second Circuit: "We therefore hold that the First Step Act does not entail a plenary resentencing, and that it does not obligate a district court to recalculate an eligible defendant's Guidelines range, except for those changes that flow from Sections 2 and 3 of the Fair Sentencing Act of 2010, when considering as a discretionary matter whether (or by how much) to grant a sentence reduction." *United States v. Moore*, 975 F.3d 84, 92 (2d Cir. 2020). Under this approach, there is no requirement at the outset to account for intervening legal developments in recalculating the guidelines.

We take just one circuit, the Fourth Circuit, to require district courts to engage in a plenary resentencing under the First Step Act that must account for all changes in law since the original sentencing, not just the changes established by the Fair Sentencing Act. In a divided decision, it ruled that the district court "should recalculate [the defendant's] Guidelines range without the career-offender enhancement" and should account for all intervening legal developments in making the new calculation. *United States v. Chambers*, 956 F.3d 667, 675 (4th Cir. 2020). *But see id.* at 676 (Rushing, J., dissenting) ("Section 404 . . . permits a district court to reduce a final sentence to account for the statutory changes wrought by Sections 2 and 3 of the Fair Sentencing Act. It does not expressly permit a district court to reduce a sentence based on any other intervening changes in the law.").

Maxwell insists that we have already taken sides in this debate and that we embraced the Fourth Circuit's approach in *United States v. Boulding*, 960 F.3d 774 (6th Cir. 2020). But that is not true. *Boulding* does not hold, or for that matter say, that district courts must engage in a plenary recalculation of the guidelines range at the outset, requiring the court to redetermine the guidelines range based on all intervening legal developments, not just passage of the Fair Sentencing Act. Rather, because Boulding's original guidelines range was dictated by the statutory mandatory minimum sentence of life in prison, it was the Fair Sentencing Act, not other intervening legal developments, that required a recalculation of an amended guidelines range. *Id.* at 776–78. *Boulding* no doubt speaks to a court's discretion to consider intervening legal developments when responding to a petition under the First Step Act, *id.* at 784, a point to which we will return in a moment. But it does not require a plenary resentencing, an approach consistent with decisions before and after it. In *United States v. Foreman*, decided before *Boulding*, we observed that the defendant's career-offender argument "presupposes a plenary resentencing and career-offender determination to which he was never entitled." 958 F.3d 506, 515 (6th Cir. 2020). We said the same thing in *Smith*. *United States v. Smith*, 958 F.3d 494, 499 n.3 (6th Cir. 2020) (noting that the district court did not abuse its discretion in declining to consider other intervening legal developments in ruling on a First Step Act motion).

B.

To say that the First Step Act does not require plenary resentencing hearings is not to say that it prohibits trial judges from considering intervening legal and factual developments in handling First Step Act requests. The Act's "as if" directive tells us some things, but not all things, about how to handle these petitions and about the extent to which a sentencing judge must separate the present from the past in ruling on these motions. A nagging question remains: How could a district court exercise its discretion in deciding whether to make a First Step Act reduction without considering the § 3553(a) factors? And if a court may consider these factors in making that decision, why can't it account for future dangerousness and up-to-date notions about the risk of recidivism of *this* defendant, including his career-offender status under the law *today*?

That indeed seems to be the line our cases have drawn. While they do not require district courts to conduct plenary resentencing hearings in response to a petition under the First Step Act, they permit courts to consider subsequent developments in deciding whether to modify the original sentence and, if so, in deciding by how much. As we put it in *United States v. Ware*: Any "consideration of the impact that *Apprendi* would have had on [the defendant's] statutory sentencing range is a factor that the district court may consider when deciding whether, in its discretion, to grant relief." 964 F.3d 482, 488 (6th Cir. 2020). We said something similar in *Foreman*. Even as we noted that the defendant's career-offender argument "presupposes a plenary resentencing and career-offender determination to which he was never entitled," we intimated that the court could consider this intervening development in deciding how to exercise its discretion. *Foreman*, 958 F.3d at 515 & n.5. So too in *United States v. Lawson*: When "deciding whether to grant a defendant's motion under the First Step Act, the district court may consider—as simply a 'factor' under 18 U.S.C. § 3553—that the defendant was sentenced based in part on what would now be considered a legal mistake." 824 F. App'x 411, 412 (6th Cir. 2020). In drawing this line, we have permitted consideration of a defendant's conduct in prison, *e.g.*, *United States v. Williams*, 972 F.3d 815, 817 (6th Cir. 2020); *United States v. Allen*, 956 F.3d 355, 357–58 (6th Cir. 2020), as well as changes in our precedents, *Ware*, 964 F.3d at 488–89; *see also United States v. Richardson*, 960 F.3d 761, 765 (6th Cir. 2020) (noting that the district court considered "the defendant's history and characteristics (including his

post-incarceration conduct)" when deciding whether to grant relief); *United States v. Ruffin*, 978 F.3d 1000, 1009 (6th Cir. 2020) (noting that the district court "pointed out how prison authorities had disciplined Ruffin 'as recently as July 2019 for possessing an unauthorized item and being insolent to staff'"); *United States v. Martin*, 817 F. App'x 180, 183 (6th Cir. 2020) ("The district court is permitted to consider post-conviction conduct, such as Martin's good behavior in the Bureau of Prisons and the fact that Martin no longer qualifies as a career offender."); *United States v. Butler*, 805 F. App'x 365, 369 (6th Cir. 2020) (noting that "the district court considered some § 3553(a) factors and some of his post-conviction rehabilitation efforts").

Most other circuits follow a similar approach. The Second Circuit divides First Step Act petitions into two steps. The district court initially should recalculate the guidelines range using only the First Step Act's amendments and not any other changes since the defendant's original sentence. In its words: The Act "issues no directive to allow re-litigation of other Guidelines issues—whether factual or legal—which are unrelated to the retroactive application of the . . . Act." *Moore*, 975 F.3d at 91. This threshold recalculation thus does not account for other developments, including intervening career-offender decisions. *Id.* at 89–92. After that, however, the Second Circuit allows district courts, in exercising their discretion under the Act, to consider intervening precedential and factual developments in balancing the § 3553(a) factors. *Id.* at 92 n.36 ("We hold only that the First Step Act does not obligate a district court to consider post-sentencing developments. We note, however, that a district court retains discretion to decide what factors are relevant as it determines whether and to what extent to reduce a sentence."); *see also United States v. Ortiz*, 832 F. App'x 715, 718 (2d Cir. 2020).

In considering a criminal defendant's dangerousness to the community, one of the § 3553(a) factors that a district court may balance in handling a First Step Act request, the Seventh Circuit allows the court to look at the point in real time. Thus: "[T]oday's Guidelines may reflect updated views about the seriousness of a defendant's offense or criminal history. So, a defendant may . . . present evidence of his post-sentencing conduct in support of a reduced sentence. And a court may look to § 3553(a)'s familiar framework when assessing whether to impose a reduced sentence." *United States v. Shaw*, 957 F.3d 734, 742 (7th Cir. 2020).

The Tenth Circuit likewise notes that a trial court's decision to recalculate the range to account for other changes in the law is discretionary: The First Step Act "gives district courts discretion to reconsider whether the defendant would still be designated as a career offender in light of 'subsequent decisional law that clarifies (not amends) the related career offender provision at issue.'" *United States v. Robertson*, No. 20-6014, 2020 WL 7333449, at *2 (10th Cir. Dec. 14, 2020) (quotation omitted); *see also United States v. Crisp*, No. 20-5040, 2021 WL 508492, at *2 (10th Cir. Feb. 11, 2021). And it permits this approach even after determining that a "correct Guideline range calculation is paramount, and the district court can use all the resources available to it to make that calculation." *United States v. Brown*, 974 F.3d 1137, 1145 (10th Cir. 2020); *see also United States v. Moore*, 963 F.3d 725, 727 (8th Cir. 2020) ("When reviewing a section 404 petition, a district court may, but need not, consider the section 3553 factors.").

All told, our decisions and most of our sister circuits permit defendants to raise these intervening developments, such as changes to the career-offender guidelines, as grounds for reducing a sentence, and they permit (but do not require) district courts to consider these developments in balancing the § 3553(a) factors and in deciding whether to modify the original sentence.

One might fairly ask what difference all of this makes. If a court ultimately may consider intervening legal developments, why does it make a difference whether the court considers them through a plenary resentencing or later? The key impact is that a court, in addressing these arguments by a defendant, has discretion not to recalculate the guidelines to account for intervening legal developments. Given the First Step Act's goal of lessening undue disparities in criminal sentencing, a court could reasonably adopt the position that allowing inmates who qualify for resentencing to benefit from other changes in the legal landscape cuts against that laudable aim by denying this same benefit to individuals convicted of uncovered offenses. That's the thrust of our decision in *Ware*. The district court in that case, we held, did not abuse its discretion when it declined to reduce a sentence because it "remained concerned about sentencing disparities, as other defendants who were similarly sentenced for powder-cocaine offenses . . . could not benefit from retroactive application" of intervening case law. *Ware*, 964

F.3d at 486. One last point: We need not decide today whether the First Step Act permits a district court to modify a sentence below the changes ushered in by the Fair Sentencing Act.

C.

Gauged by this measuring stick, the district court's decision should be affirmed. The court first deemed Maxwell eligible for relief under the Act. It next calculated Maxwell's sentencing range as the law existed at the time of his original offense, accounting for the new variable created by the Fair Sentencing Act. This new range reduced Maxwell's mandatory minimum from 20 to 10 years.

The court next acknowledged Maxwell's argument that his guidelines range would be even lower today thanks to intervening changes affecting his career-offender status. It recognized its discretion to consider Maxwell's sentencing range under the 2018 edition of the guidelines when it weighed the § 3553(a) factors. And it said that it would consider "the factors outlined in 18 U.S.C. § 3553(a), including the defendant's amended sentencing guidelines range, and any relevant post-sentencing conduct." R.383 at 4.

Operating within its broad discretion, the court considered and rejected each of Maxwell's arguments in support of a reduced sentence. It weighed the severity of Maxwell's criminal conduct along with his leadership role in the conspiracy, criminal history, and likeliness of recidivism. It balanced those factors against his steps toward rehabilitation, completion of educational courses, and the lack of any prison incidents. That balancing led the court to stick with a thirty-year sentence. That was not an abuse of discretion on this record. As we have held before, a district court could reasonably reject reliance on later legal changes unrelated to the First Step Act out of "concern regarding disparities with other similarly situated defendants." *Ware*, 964 F.3d at 489.

Contrary to Maxwell's claims, the district court adequately considered Maxwell's likelihood of recidivism, granted sufficient weight to his post-sentence rehabilitation, and did not need to explicitly address Maxwell's arguments that he would not be a danger to the community if released given his age and his health struggles. The court noted that Maxwell did not have any serious incidents while in prison and that he had "completed various educational courses."

R.383 at 8. And it commended Maxwell for taking "steps toward rehabilitation." *Id.* But in balancing these considerations, the court found that Maxwell's "efforts d[id] not warrant a sentence reduction when considered in conjunction with the other factors." *Id.* The court found that Maxwell was a likely recidivist, as he "had been involved in serious criminal activity for the majority of his adult life," and his "long pattern of criminal conduct exhibits a danger to the public and a lack of respect for the law." *Id.* at 7. It is clear that the court reasoned through Maxwell's arguments and acted well within its discretion in concluding that "a sentence of 360 months' imprisonment remains sufficient, but not greater than necessary, to meet all of the goals and objectives of 18 U.S.C. § 3553." *Id.* at 8. The law does not require courts to expressly rebut each argument. *See United States v. Coleman*, 835 F.3d 606, 616 (6th Cir. 2016); *United States v. Collington*, 461 F.3d 805, 809 (6th Cir. 2006). For all of these reasons, no error, whether procedural or substantive, occurred when the district court denied Maxwell's motion for a discretionary sentence reduction under the First Step Act.

We affirm.