**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-2717
_____

UNITED STATES OF AMERICA

v.

CLIFTON SHIELDS, a/k/a D,
                                        Appellant
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 1-08-cr-00314-002)
District Judge:  Hon. Malachy Mannion
_____

Argued September 28, 2021

Before:  AMBRO, KRAUSE, and BIBAS, *Circuit Judges.*

(Opinion Filed: September 1, 2022)

David R. Fine [ARGUED]
Brian J. Smith
K&L Gates
17 North Second Street
18th Floor
Harrisburg, PA 17101
    *Counsel for Court-Appointed Amicus Curiae*

Daryl F. Bloom [ARGUED]
Eric Pfisterer
Office of United States Attorney
Middle District of Pennsylvania
228 Walnut Street, P.O. Box 11754
220 Federal Building and Courthouse
Harrisburg, PA 17108
    *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

KRAUSE, *Circuit Judge*.

In the four years since Congress enacted the First Step Act of 2018, Pub. L. No. 115–391, 132 Stat. 5194, the parameters of the resentencing proceedings it authorizes have evolved as courts labored to understand what the Act requires, what it permits, and what it prohibits. What has remained consistent, however, are background principles of sentencing law, including a court's foundational obligations to allow the parties an opportunity to make arguments and to consider all nonfrivolous arguments they present. Here, Appellant Clifton Shields, appealing the District Court's decision to reduce his

sentence from 360 to 262 months' imprisonment under the First Step Act, contends that the Court abused its discretion by failing to consider his arguments concerning intervening changes in law affecting his career-offender status and by denying him the opportunity to make other arguments in favor of a downward variance. Because the Court erred in finding that it did not have the discretion to consider these arguments, and because it denied Shields the opportunity to make his case in full, we will vacate his reduced sentence and remand for resentencing.

I.    **Factual and Procedural Background**

In 2008, Shields was convicted after a jury trial of one count of conspiracy to distribute and possess with intent to distribute heroin and 50 grams or more of crack cocaine, in violation of 21 U.S.C. § 846, and one count of distributing and possessing with intent to distribute 50 grams or more of crack cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(iii). In anticipation of Shields's sentencing, the United States Probation Office prepared a Presentence Report (PSR) in which it found that his offense level was 37, based on the quantity of drugs involved, his possession of a dangerous weapon in connection with the conspiracy, and his status as a "career offender" as a result of (1) his 1995 conviction for robbery with a deadly weapon in violation of Maryland law and (2) his 2002 conviction for conspiracy to distribute crack cocaine in violation of Maryland law. With the criminal history category of VI, which automatically applied due to his career-offender designation, this calculation resulted in an advisory Guidelines range of 360 months to life.

At sentencing, Shields raised two objections to the PSR that are relevant to this appeal: one, to the enhancement for the

use of a firearm in connection with the offense,[1] and the other, to the drug quantity attributed to him, which exceeded that found by the jury.[2] The District Court declined to rule on either because, as Shields's counsel conceded, neither would have had any effect on his Guidelines range given his career-offender status. The Court sentenced Shields to a term of 360 months' imprisonment on each count, to run concurrently, followed by five years' supervised release.

At the time Shields was sentenced, an offense involving 50 or more grams of crack cocaine triggered a mandatory minimum sentence of 10 years' imprisonment, while an offense involving powder cocaine would not result in the same mandatory minimum unless the drug quantity was 100 times as great. The following year, Congress enacted the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372, to reduce this and other disparities between the sentencing schemes for crack and powder cocaine. Shields became eligible for resentencing under the new regime in 2018, when Congress passed the First Step Act, which authorized district courts to "impose a reduced sentence" for qualifying movants "as if sections 2 and 3 of the Fair Sentencing Act . . . were in

---

[1] Shields was acquitted of the charge of possession of a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A).

[2] Specifically, the PSR attributed to him at least 7.6 ounces of cocaine base (crack), at least 3.77 grams of heroin, and 5.46 grams of marijuana, while the jury's only finding as to drug weight was 50 grams or more of crack cocaine in connection with both his conspiracy conviction and distribution and possession with intent to distribute conviction.

effect at the time the covered offense was committed."  §
404(b), 132 Stat. at 5222.

Shields sought relief under the First Step Act by filing a motion for resentencing under § 404(b) in 2019.   Notably, his case had by that time been reassigned to a different judge because the judge who oversaw his trial and imposed his original sentence had passed away.  In his § 404(b) motion, Shields requested a full, in-person sentencing hearing or, in the alternative, the opportunity to file a sentencing memorandum with supplemental documentation because he "wishe[d] to present evidence of his post-sentence rehabilitation, including information from family members and others." *United States v. Shields*, No. 1:08-cr-00314-MEM-2 (M.D. Pa. Apr. 12, 2019), Dkt. No. 252 [hereinafter "First Step Act Mot."] at 13–14.  He also sought to dispute his career-offender status, as he believed one of his prior convictions would no longer be considered a predicate offense, and to renew his objections to the firearm enhancement and the drug weight used to calculate his Guidelines range.   Shortly after filing his reply brief, Shields submitted two "supplements" to demonstrate his rehabilitation, consisting of his Bureau of Prisons Individualized Reentry Plan and numerous certificates of completion and achievement from classes and other programs he had attended in prison.

Without addressing Shields's request to submit a sentencing memorandum, the District Court issued an opinion finding that he qualified for resentencing, denying his request for a full resentencing hearing, and reducing his sentence to 262 months' imprisonment on each count, to run concurrently, followed by four years' supervised release.   The Court also declined to consider "whether under current law [Shields] would be considered a career offender" because it believed that

5

"[t]he First Step Act does not permit the court to consider other statutory or sentencing guideline amendments enacted since the date the defendant committed his or her offense." *United States v. Shields*, No. 1:08-cr-00314-MEM-2 (M.D. Pa. July 10, 2019), Dkt. No. 262 [hereinafter "Dist. Ct. Op."] at 8 n.3 (quoting *United States v. Crews*, 385 F. Supp. 3d 439, 447 n.7 (W.D. Pa. 2019)). It then proceeded to consider the factors set out in 18 U.S.C. § 3553(a) and noted that the reduced sentence it was imposing, at the bottom of Shields's amended Guidelines range, reflected its consideration of those factors as well as the documents Shields had submitted as evidence of rehabilitation.

On appeal, Shields contends that the District Court erred by refusing to consider whether he currently qualifies as a career offender and declining to rule on his objections to drug weight and the firearm enhancement. He also argues that the Court erred in denying him a resentencing hearing.

Shields was initially represented by counsel on appeal, but after his opening brief was filed, his counsel filed a motion to withdraw and Shields moved to proceed pro se, citing his counsel's refusal to include certain arguments that he wished to press. We granted those motions[3] and then appointed amicus curiae to address whether the District Court erred by disposing of Shields's motion without (1) holding a hearing

---

[3] As a result, the brief and appendix filed by Shields's counsel were stricken from the record and Shields's pro se briefs represent his only written submissions.

and/or (2) granting Shields's request for permission to file a sentencing memorandum.[4]

In view of two opinions we handed down after the District Court's resentencing in this case, *United States v. Easter*, 975 F.3d 318 (3d Cir. 2020), and *United States v. Murphy*, 998 F.3d 549 (3d Cir. 2021), *as amended* (Aug. 4, 2021), amicus agreed with Shields that the District Court had erred by declining to recalculate Shields's Guidelines range at the time of resentencing and by refusing to reassess his career-offender designation. Amicus also supported Shields's view that the District Court should have held an in-person sentencing hearing because the judge who resentenced him was not the same judge who imposed his original sentence. At a minimum, amicus urged, the Court should have allowed Shields to file a sentencing memorandum with additional exhibits.

II. **Jurisdiction and Standard of Review**

The District Court had jurisdiction over the initial criminal proceeding pursuant to 18 U.S.C. § 3231 and jurisdiction to consider Shields's request for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(B) and § 404 of

---

[4] The Court commends David Fine, Esq. and Brian Smith, Esq. for the excellent written and oral advocacy they provided the Court as amicus curiae. We also extend our thanks to their firm, K&L Gates, for supporting this important public service and professional development opportunity for rising attorneys. Attorneys who act *pro bono* fulfill the highest service that members of the bar can offer to the court system and to the legal profession.

the First Step Act, 132 Stat. at 5222.  We have appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

We review a criminal sentence for a "violation of law," 18 U.S.C. § 3742(a)(1), which includes "(i) matters of statutory interpretation over which we have plenary review, as well as (ii) questions about reasonableness," which we review for abuse of discretion.  *Easter*, 975 F.3d at 322 (quoting *United States v. Manzella*, 475 F.3d 152, 156 (3d Cir. 2007)).  Where a district court finds a defendant eligible for a sentence modification under 18 U.S.C. § 3582(c) but either declines to reduce the sentence or imposes a reduced sentence with which the movant is not satisfied, we review for abuse of discretion.  *See Easter*, 975 F.3d at 322; *Murphy*, 998 F.3d at 553–54.

## III.  **Discussion**

This case raises two questions concerning resentencing under the First Step Act.  As we explain below, the first—whether a district court, short of recalculating the benchmark Guidelines range, is required to consider a defendant's arguments regarding intervening developments in law or changes in the defendant's circumstances—was just answered in the affirmative by the Supreme Court in *Concepcion v. United States*, 142 S. Ct. 2389 (2022).  The second question relates to the procedures adopted at resentencing, including whether the district judge, at least when different from the original sentencing judge, is required to hold an in-person hearing or, in any case, must allow a defendant a reasonable opportunity to file a sentencing memorandum before resentencing.  We address each question in turn.

8

A. Consideration of Intervening Changes in the Facts or Law.

Shields, supported by amicus, argues that the District Court was obligated to recalculate his benchmark Guidelines range to account for the fact that, under current law, he would no longer be considered a career offender. At the time this case was argued, they were correct, and the Government admitted as much. That is because our decisions in *Easter* and *Murphy* controlled and dictated that the District Court was required not only to consider Shields's argument that he would no longer qualify as a career offender, but also to undertake and apply "an accurate calculation of the Guidelines range *at the time of resentencing*."[5]  *Murphy*, 998 F.3d at 552 (emphasis added); *see also Easter*, 975 F.3d at 325–26.

After we heard argument on Shields's appeal, however, the Supreme Court issued its opinion in *Concepcion*, abrogating these decisions in certain respects but upholding them in others. In *Concepcion*, the Court took up the question of whether district courts "must, may, or may not consider intervening changes of law or fact" when deciding a First Step Act motion. 142 S. Ct. at 2398.

In the category of what courts "may not" do, the Court held, contrary to *Easter* and *Murphy*, that a district court's discretion does not empower it to "recalculate a movant's

---

[5] To be clear, the District Court was not disregarding our guidance when it declined to consider whether Shields would qualify as a career offender under current law because *Easter* and *Murphy* were decided in 2020 and 2021, respectively, after the District Court resentenced Shields in 2019.

9

benchmark Guidelines range in any way other than to reflect the retroactive application of the Fair Sentencing Act," as "the First Step Act directs district courts to calculate the Guidelines range as if the Fair Sentencing Act's amendments had been in place at the time of the offense." *Id.* at 2402 n.6. *Concepcion* thus validated the District Court's decision to recalculate Shields's Guidelines range as if the Fair Sentencing Act's amendments had been in place at the time of his offense, without taking into account any other intervening changes in law, and to use that revised Guidelines range of 262 to 327 months as its starting point in deciding whether to reduce Shields's sentence. *See id.* (instructing that a defendant's Guidelines range, revised to reflect the retroactive application of the Fair Sentencing Act, "anchor[s]" the resentencing proceeding (quoting *Peugh v. United States*, 569 U.S. 530, 541 (2013)).

As far as what courts "may" consider, we had held that they are authorized to take into account, at the time of resentencing, any changed circumstances, "includ[ing] post-sentencing developments, such as health issues or rehabilitation arguments, as were raised" by the parties, *Easter*, 975 F.3d at 327, *Murphy*, 998 F.3d at 559, and the Supreme Court in *Concepcion* agreed. In resolving the circuit split on this matter, the Court reviewed the text and structure of the First Step Act, noted the broad discretion that judges have historically exercised when imposing and modifying sentences, and acknowledged that district courts deciding § 404(b) motions regularly consider evidence of a movant's postsentencing rehabilitation or misconduct, as well as unrelated, nonretroactive Guidelines amendments when raised by the parties. *Concepcion*, 142 S. Ct. at 2398–2403. It concluded that sentencing courts' "broad discretion to consider

10

all relevant information . . . consistent with their responsibility to sentence the whole person before them" also applies to "later proceedings that may modify an original sentence," *id.* at 2398, and that "a district court adjudicating a motion under the First Step Act may consider [any] intervening changes of law (such as changes to the Sentencing Guidelines) or changes of fact (such as behavior in prison) in adjudicating a First Step Act motion," *id.* at 2396.

The Court grounded this holding in *Pepper v. United States*, 562 U.S. 476 (2011), which "found it 'clear that when . . . resentencing, a district court may consider evidence of a defendant's rehabilitation since his prior sentencing.'" *Concepcion*, 142 S. Ct. at 2399 (quoting *Pepper*, 562 U.S. at 490). *Pepper* recognized that "postsentencing rehabilitation bears directly on the District Court's overarching duty to 'impose a sentence sufficient, but not greater than necessary,' to serve the purposes of sentencing." *Pepper*, 562 U.S. at 493 (quoting 18 U.S.C. § 3553(a)). For that reason, and after considering how the defendant's postsentencing conduct informed various of the § 3553(a) factors, including "the 'history and characteristics' of a defendant that Congress intended sentencing courts to consider [under] § 3553(a)," *id.* at 492, the *Pepper* Court held that § 3553(a) "permits district courts to consider [not] only postsentencing evidence detrimental to a defendant," but also "favorable evidence" of a defendant's conduct postsentencing, *id.* at 504.

In *Concepcion*, the Court described *Pepper*'s deeply rooted "federal sentencing framework" as "allow[ing] sentencing judges to consider the 'fullest information possible concerning the defendant's life and characteristics.'" *Concepcion*, 142 S. Ct. at 2399 (quoting *Pepper*, 562 U.S. at 488, 490). It also observed that though Congress "is not shy"

11

about imposing such limits where it sees fit, it had not done so in the First Step Act. *Id.* at 2400–01. Rather, "[n]othing in the text and structure . . . expressly, or even implicitly, overcomes the established tradition of district courts' sentencing discretion." *Id.* at 2401. So combining that discretion with courts' long-standing "obligat[ion] to consider nonfrivolous arguments presented by the parties," *Concepcion* concluded that a district court confronting a § 404(b) motion is "require[d] . . . to consider intervening changes when parties raise them"— including evidence of both "postsentencing rehabilitation and unrelated Guidelines amendments when raised by the parties." *Id.* at 2396, 2402–03.

But while the resentencing court must "consider nonfrivolous arguments presented by the parties," *id.* at 2396, it is not required to accept those arguments. To the contrary, the First Step Act neither "require[s] a district court to accept a movant's argument that evidence of rehabilitation or other changes in law counsel in favor of a sentence reduction, or the Government's view that evidence of violent behavior in prison counsels against providing relief." *Id.* at 2404–05. It "may, in its discretion, dismiss arguments that it does not find compelling," and it may decline to grant any reduction whatsoever. *Id.* at 2404. But "when raised by the parties," any information "relevant and probative" to sentencing must at least be considered, consistent with the court's "standard obligation[s]" at sentencing and "background principles" of sentencing jurisprudence. *Id.* at 2403–04.

As *Concepcion* applies here, the District Court erred in holding that "[t]he First Step Act does not permit . . . consider[ation] [of] other statutory or sentencing guideline amendments enacted since the date [Shields] committed his . . . offense," and, on the basis of that mistaken premise, refusing

12

to consider Shields's argument that, under current law, he would not be considered a career offender. Dist. Ct. Op. 8 n.3. On remand, then, the District Court should start with the benchmark Guidelines range recalculated only to the extent it adjusts for the Fair Sentencing Act and should consider Shields's arguments that he no longer qualifies as a career offender[6] and his renewed objections to the firearm

---

[6] In his briefing before the District Court, Shields argued only that his 1995 robbery conviction is no longer a predicate offense under the career-offender guideline because it qualified as a crime of violence under the residual clause of U.S.S.G. § 4B1.2(a), which has been excised from the Guidelines. And the District Court was understandably skeptical, as Shields did not explain why this offense would not qualify under the "elements clause" of § 4B1.2(a). *See United States v. Redrick*, 841 F.3d 478, 484 (D.C. Cir. 2016) (holding that the same Maryland conviction qualifies as a "violent felony" under the "elements clause" of the Armed Career Criminal Act, which contains identical language as U.S.S.G. § 4B1.2(a)). But as amicus points out, it appears that Shields would not be considered a career offender today in any event because our decision in *United States v. Nasir*, 17 F.4th 459 (3d Cir. 2021), established that inchoate crimes, like Shields's 2002 conviction for conspiracy to distribute crack cocaine under Maryland law, do not count as "controlled substance offenses" under U.S.S.G. § 4B1.2(b) for purposes of the career-offender guideline. *See id.* at 471–72. For that reason, we cannot accept the Government's argument that the District Court's failure to consider intervening changes in the law was merely harmless error.

enhancement and the drug weight that was used to calculate his Guidelines range.[7]

B.      Resentencing Procedures

This brings us to Shields's and amicus's second argument: that the District Court abused its discretion when it denied his request for an in-person resentencing hearing or, in the alternative, the opportunity to submit a sentencing memorandum.

1.      *Resentencing Hearing After Reassignment*

As both parties and amicus acknowledge, we have already held that in the normal course, a First Step Act movant is not "entitled to a plenary resentencing hearing at which he would be present."[8]  *Easter*, 975 F.3d at 326.  Shields and

---

[7] While we held in *Murphy* that a resentencing court cannot reconsider factual findings made by the original sentencing court concerning the underlying offense, 998 F.3d at 554–55, the District Court in this case did not make any findings pertaining to these enhancements during Shields's original sentencing because it concluded that neither enhancement would change his Guidelines range given his career-offender status.  As a result, just as the Court is obligated to consider Shields's argument that he would not be considered a career offender under current law, it must also consider his renewed factual objections going to the basis for those enhancements.

[8] In doing so, we joined "the clear consensus among our sister circuits."  *Easter*, 975 F.3d at 326 (collecting cases); *see*

amicus assert, however, that this case presents a new wrinkle precluding the straightforward application of that rule because the judge who decided Shields's First Step Act motion is not the same judge who imposed his original sentence. The question of whether an in-person hearing must be held under these circumstances is one of first impression for our Court.

Amicus contends that an in-person hearing takes on special importance where a district judge has not previously "observe[d] and interact[ed] with the defendant" and therefore may not be able to meaningfully consider a movant's sentencing arguments. Amicus Br. 9. This argument finds support in the rationale for our review of sentences for abuse of discretion: that "[t]he sentencing judge is in a superior position to find facts and judge their import" because "[t]he judge sees and hears the evidence, makes credibility determinations, has full knowledge of the facts and gains insights not conveyed by the record." *United States v. Tomko*, 562 F.3d 558, 566 (3d Cir. 2009) (en banc) (first alteration in *Tomko*) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). For obvious reasons, a district judge who conducts a First Step Act resentencing based purely on a paper record will not have this advantage over the reviewing appellate court.

It is certainly true that an in-person hearing may enhance a district court's ability to consider relevant factual and legal arguments and, of course, nothing precludes a district court from holding such a hearing on a First Step Act resentencing if it sees fit in its discretion to do so. But we

---

*also United States v. Smith*, 982 F.3d 106, 112 (2d Cir. 2020) (holding that no in-person hearing is required to decide a First Step Act motion).

cannot say that judges resentencing defendants whom they have never met are categorically unable to give the § 404(b) motion due consideration.

First and foremost, a judge who presided over a defendant's sentencing hearing years or even decades ago may not have a clear memory of the original sentencing, especially considering that district judges sentence, on average, over a hundred defendants each year. *See Gall*, 552 U.S. at 52 n.7 (noting that, as of 2006, district court judges were sentencing an average of 117 defendants every year). Yet, we held in *Easter* that First Step Act movants are not entitled to in-person plenary resentencing hearings, and we made no distinction between those judges who specifically recalled the original proceedings and those who did not. In either case, as in the case of a judge to whom a matter involving a motion for First Step Act resentencing has been reassigned, we are confident our colleagues on the district courts can and will carefully consider the factual information and legal arguments raised by the parties.

Second, a district judge resentencing a defendant under the First Step Act is not starting from scratch. Rather, that judge has the benefit of the record from the original sentencing, including the PSR, the transcript of the sentencing hearing, and the sentence imposed, which reflects the original sentencing judge's consideration of the § 3553(a) factors. And although a court deciding a § 404(b) motion is obligated to consider relevant intervening legal or factual developments brought to their attention by the parties, there is no requirement that the court conduct a *de novo* presentence investigation or raise arguments about new developments *sua sponte*. *See Concepcion*, 142 S. Ct. at 2404 (emphasizing the "broad discretion that the First Step Act affords to district courts"). It

16

stands to reason, then, that unlike in an initial or plenary resentencing, a hearing is not essential in a First Step Act sentencing modification proceeding, as the record of the original sentencing, along with the arguments of the parties, provide the judge with sufficient information to decide whether and by how much to reduce the movant's sentence.

Finally, with or without a hearing, the district court's exercise of discretion in ruling on a § 404(b) motion is subject to judicial review. Judges conducting First Step Act resentencings are required to "articulate . . . a brief statement of reasons" in which they "explain their decisions and demonstrate that they considered the parties' arguments." *Id*.; *see Easter*, 975 F.3d at 326–27 (requiring district courts to demonstrate their consideration of the parties' arguments). On appeal, our review is deferential in that we do not "substitute [our] judgment for that of the sentencing court as to the appropriateness of a particular sentence," *Concepcion*, 142 S. Ct. at 2404, but we analyze the record to ensure that the district court has made no legal errors and "has demonstrate[d] that it has considered the arguments before it." *Id.* at 2404–05; *see United States v. Grier*, 475 F.3d 556, 572 (3d Cir. 2007) (en banc) (remanding where district court had not provided "a sufficiently detailed explanation" of its reasoning in imposing a particular sentence "that lends itself to effective review"). This additional level of review ensures district courts satisfy their "standard obligation to explain their decisions and demonstrate that they considered the parties' [nonfrivolous] arguments." *Concepcion*, 142 S. Ct. at 2404.

Of course, that explanation need not "'expressly rebut each argument' made by the parties." *Id.* (quoting *United States v. Maxwell*, 991 F.3d 685, 694 (6th Cir. 2021)). No doubt it would be prudent and facilitate appellate review (in

17

effect, the better practice) for a district court judge who did not also impose the defendant's initial sentence to allow a fuller opportunity to present his case, thus allowing the judge "more extensively" to set forth her reasons for modifying or declining to modify a sentence. *United States v. Jones*, 980 F.3d 1098, 1113 (6th Cir. 2020); *see United States v. High*, 997 F.3d 181, 189 (4th Cir. 2021) (noting that it was "significant" that the judge who denied a defendant's motion for compassionate release was the same judge who originally sentenced him for purposes of evaluating the sufficiency of the judge's explanation); *cf. Chavez-Mesa v. United States*, 138 S. Ct. 1959, 1967 (2018) (affirming resentencing within the amended Guidelines range based on a brief statement of reasons where the same judge had imposed the defendant's original sentence and stated on the record his reasons for the original sentence). But as a general matter, a district judge need only "set forth enough [in his statement of reasons] to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Rita v. United States*, 551 U.S. 338, 356 (2007).

In sum, neither the original sentencing judge nor a judge to whom the case has been reassigned is required to hold an in-person resentencing hearing on a First Step Act motion, so the District Court here did not err in denying that request.

### 2. Opportunity to Submit a Sentencing Memorandum

Even when a district court holds an in-person resentencing hearing—and certainly when it does not—a sentencing memorandum offers an invaluable opportunity for First Step Act movants to present their arguments. And under well-established sentencing jurisprudence, "district courts are

always obligated to consider nonfrivolous arguments presented by the parties" and provide an explanation of their decisions demonstrating "that [they] 'reasoned through [those] arguments.'" *Concepcion*, 142 S. Ct. at 2396, 2404 (quoting *Maxwell*, 991 F.3d at 693). But if a district court does not allow a movant a reasonable opportunity to present his arguments, *a fortiori* it cannot consider them.

Unfortunately, that is how things played out here. Shields's motion requested a resentencing hearing, or, in the alternative, "the opportunity to file a memorandum and supplemental documentation to support his position concerning the appropriate guideline range and for a variance." First Step Act Mot. 15. He reiterated that request "to supplement the record in support of a variance" in his reply brief. *United States v. Shields*, No. 1:08-cr-00314-MEM-2 (M.D. Pa. June 11, 2019), Dkt. No. 258 at 9. But without addressing Shields's request to file a sentencing memorandum and supplement the record, the District Court simply denied the request for a hearing and imposed its reduced sentence. Shields thus was not afforded a full opportunity to present his resentencing arguments to the District Court.

The Government counters by pointing out that Shields did submit two "supplements" that pertained to his rehabilitation, including his Bureau of Prisons Individualized Reentry Plan and the various certificates of completion and achievement from prison programs. But these supplements consisted solely of exhibits, not arguments, and Shields conveyed in both his briefing before the District Court and on appeal that he would have filed a sentencing memorandum, accompanied by additional exhibits if permitted. The District Court erred by denying Shields either a hearing or a reasonable

19

opportunity to present his sentencing arguments in writing. *See Concepcion*, 142 S. Ct. at 2396.

As amicus helpfully points out, several district courts in our Circuit have adopted a procedure in deciding First Step Act motions that is designed to avoid this misstep, and there is much to recommend it. First, upon receiving the motion, the court determines whether the defendant is eligible for relief under the statute; second, the court orders the Probation Office to prepare an addendum to the PSR addressing the proper Guidelines calculation; third, the Court gives the parties the opportunity to file memoranda noting any objections to the PSR, discussing the § 3553(a) factors, and attaching any relevant documentation; and fourth, the Court decides whether to reduce the defendant's sentence, and if so, by how much.[9] While we decline to mandate this approach, we applaud those courts that have developed and adopted it, as it ensures an orderly and fair process and reduces the likelihood of remand on appeal.

## IV.     Conclusion

For the foregoing reasons, we will vacate Shields's reduced sentence and remand for further proceedings in line with this opinion.

---

[9] *See, e.g.*, *United States v. Patterson*, No. 1:08-cr-383 (M.D. Pa. Oct. 3, 2019), Dkt. No. 121; *United States v. Brown*, No. 1:02-cr-83 (M.D. Pa. Sept. 5, 2019), Dkt. No. 133; *United States v. Reaves*, No. 1:07-cr-104 (M.D. Pa. Jun. 14, 2019), Dkt. No. 483; *United States v. Rhines*, No. 4:01-cr-310 (M.D. Pa. Jun. 3, 2019), Dkt. No. 355.