NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0111n.06

Case No. 21-3384

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| ROBERT K. LAWSON, | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |

**FILED**
Mar 02, 2023
DEBORAH S. HUNT, Clerk

---

Before: COLE, GIBBONS, and READLER, Circuit Judges.

**CHAD A. READLER, Circuit Judge.** For the third time in four years, Robert Lawson asks us to review the district court's denial of a First Step Act sentence reduction. *See United States v. Lawson*, No. 19-3419, 2019 WL 8683560, at *1 (6th Cir. Nov. 14, 2019) (*Lawson I*); *United States v. Lawson*, 824 F. App'x 411, 412 (6th Cir. 2020) (*Lawson II*). At the time of our last order, First Step Act case law was "evolv[ing] rapidly." *Lawson II*, 824 F. App'x at 412. With the benefit of more recent jurisprudence, we asked the district court to reassess Lawson's motion. As that process was underway, the law matured even more, leaving us with a narrow issue in this appeal: whether the district court abused its discretion in weighing various sentencing factors to maintain Lawson's original 262-month sentence. Given the deference we accord the district court on that front, we affirm.

**I.**

Nearly 20 years ago, Lawson pleaded guilty to various drug and firearms charges, including one count of possessing with intent to distribute roughly 250 grams of crack cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A).  At sentencing, the district court determined that Lawson was a career offender under U.S.S.G. § 4B1.1(b), relying, in part, on a prior offense of trafficking drugs in bulk in violation of former Ohio Revised Code § 2925.03.  Lawson's career offender status drove his Guidelines range, which, after discounting for acceptance of responsibility, was 262 to 327 months.  The district judge sentenced Lawson to the bottom of the range.  Lawson did not appeal.

In the years that followed, the law that drove Lawson's sentence did not remain static.  *See United States v. McCall*, 56 F.4th 1048, 1055 (6th Cir. 2022) (en banc) (describing changes to the federal sentencing regime as both "ordinary" and "routine").  For instance, in 2005, *United States v. Booker* held that the Sentencing Guidelines are advisory, rather than mandatory.  *See* 543 U.S. 220, 245–46 (2005).  A year later, this Court held in *United States v. Montanez* that former Ohio Revised Code § 2925.03 did not qualify as a predicate career offender offense, as that statute included mere possession convictions that would not amount to a "controlled substance offense" under the categorical approach to examining predicate offenses.  *See* 442 F.3d 485, 487 (6th Cir. 2006).  And in 2010, Congress enacted the Fair Sentencing Act.  *See* Pub. L. No. 111-220, 124 Stat. 2372.  Of note, § 2 of that law raised the quantity thresholds for crack cocaine offenses under the Controlled Substances Act, such that the quantity of crack cocaine that would subject a defendant to the most severe statutory penalties increased from 50 to 280 grams.  *See id.* § 2.

Had Lawson been sentenced after these legal changes occurred, his underlying sentence may very well have been lower.  But, as is ordinarily the case, because Lawson's sentence was

final prior to these changes in the law, none had a retroactive effect on his sentence. *See Humphress v. United States*, 398 F.3d 855, 860 (6th Cir. 2005) (holding that *Booker* "does not apply retroactively" to final sentences); *Snider v. United States*, 908 F.3d 183, 191 (6th Cir. 2018) (declining collateral review of a final sentence based on an "intervening change in the law [that] rendered [a] career offender designation erroneous"); *United States v. Hammond*, 712 F.3d 333, 336 (6th Cir. 2013) (per curiam) (recognizing that the Fair Sentencing Act is not retroactive to defendants sentenced before its effective date); *see generally Dorsey v. United States*, 567 U.S. 260, 280 (2012) (describing the "ordinary practice" of applying "new penalties to defendants not yet sentenced, while withholding that change from defendants already sentenced").

In late 2018, Congress enacted the First Step Act. The Act introduced the possibility that Lawson could seek retroactive application of one of the intervening changes in sentencing law. *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5222. Section 404 of the First Step Act allows individuals (like Lawson) who have been convicted of violating a provision of the Controlled Substances Act that had its statutory penalty altered by the Fair Sentencing Act to seek a reduced sentence. *See id.* § 404(a). It authorizes (but does not require) district courts to "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." *See id.* § 404(b)–(c).

Because the 2010 law altered the statutory penalties for one of Lawson's counts of conviction, Lawson moved in March 2019 for a sentence reduction under § 404 of the First Step Act. Having reversed the first two district court decisions, we now consider the district court's third denial of Lawson's motion.

**II.**

We review the denial of an eligible prisoner's motion for a sentence reduction under the First Step Act for an abuse of discretion. *United States v. Ware*, 964 F.3d 482, 487 (6th Cir. 2020). Under that deferential standard, we grant relief only for an error of law, a clearly erroneous finding of fact, or where we are otherwise left with the "definite and firm conviction" that the district court clearly erred. *See United States v. Hymes*, 19 F.4th 928, 932–33 (6th Cir. 2021) (citations omitted). We center our attention on whether the district court (1) accurately calculated the defendant's Guidelines range and then (2) adequately considered the § 3553(a) sentencing factors. *See United States v. Boulding*, 960 F.3d 774, 783–84 (6th Cir. 2020); *see also United States v. Woods*, --- F.4th ---, No. 21-5734, 2023 WL 2301472, at *4 (6th Cir. Mar. 1, 2023) (describing the "two-step procedure" for considering sentence reductions under the First Step Act).

**A.**

We turn first to the question of the appropriate starting Guidelines range. In *United States v. Maxwell*, we held that "at the outset when determining the [G]uidelines range that will form the basis for the reduced sentence," the district court must "alter just one variable in the original sentence, not all variables." 991 F.3d 685, 689 (6th Cir. 2021). That variable is how the original Guidelines range would change if the crack-cocaine sentencing range had been reduced under the Fair Sentencing Act. *Id.* ("[The Fair Step Act] asks the court to sentence . . . "as if" the crack-cocaine sentencing range had been reduced under the Fair Sentencing Act of 2010, not as if other changes had been made to sentencing law in the intervening years."). Last year, the Supreme Court confirmed our view on this front. *See Concepcion v. United States*, 142 S. Ct. 2389, 2402 n.6 (2022); *see also Woods*, slip op. at *6 (applying *Concepcion* and holding that in "recalculating

4

the Guidelines range that anchors the resentencing, a district court may account for only those changes in law that the First Step Act permits").

Applying that rule here, Lawson's Guidelines range did not change from 2003. As we observed in affirming the denial of Lawson's 2011 request for relief under a different statute, 18 U.S.C. § 3582(c)(2), "Lawson's total offense level was based on his status as a career offender, rather than the amount of drugs that were attributed to him." *See United States v. Lawson*, No. 13-3191, slip op. at 3 (May 21, 2014). There is no dispute that, keeping everything constant except for the Fair Sentencing Act's more lenient drug quantity penalties for crack cocaine, Lawson still faces a potential life sentence for the other offenses to which he pled guilty, meaning he is still subject to the most severe career offender enhancement. *See* 21 U.S.C. § 841(b); U.S.S.G. § 4B1.1 (2004)). And even though Lawson would not be deemed a career offender if sentenced today, a district court cannot "recalculate a movant's benchmark Guidelines range in any way other than to reflect the retroactive application of the Fair Sentencing Act." *Concepcion*, 142 S. Ct. at 2402 n.6. Accordingly, recent case law plainly forecloses Lawson's suggestion that the district court should have applied other changes to federal sentencing law that were in effect at the time of the Fair Sentencing Act, such as *Montanez*, when calculating the Guidelines range.

**B.**

Starting from the "properly calculated Guidelines range" of 262 to 327 months, we turn to whether the district court "select[ed] or reject[ed] an appropriate sentence." *Concepcion*, 142 S. Ct. at 2402 n.6. This inquiry is focused on the various § 3553(a) factors that ordinarily guide district courts in imposing an initial sentence. *See Ware*, 964 F.3d at 487; *see also United States v. Foreman*, 958 F.3d 506, 513 (6th Cir. 2020). In balancing those factors and deciding whether to modify a sentence, a district court may, as the Supreme Court recently explained,

5

"consider intervening changes of law or fact in exercising [its] discretion to reduce a sentence pursuant to the First Step Act." *Concepcion*, 142 S. Ct. at 2404. The onus, albeit a rather minimal one, remains on the district court to briefly explain its decision and to demonstrate that it "reasoned through" the parties' nonfrivolous arguments. *Id.* at 2404–05 ("All that is required is for a district court to demonstrate that it has considered the arguments before it."). In turn, our review is not "overly searching," as we defer to the district court as to the appropriateness of a particular sentence. *Id.* at 2404.

The district court provided a wholly adequate explanation for why it denied Lawson's motion, even though Lawson's "advisory sentencing range would be much lower were he sentenced today." First, the sentencing court emphasized the unique nature of Lawson's crimes. Lawson did not simply dabble in crack cocaine, as he trafficked "substantial amounts" of powder cocaine, as well. His crimes also were based out of a home he shared with his girlfriend and his two minor children, risking their safety. Second, the district court explained its concerns with Lawson's criminal history, which included an escalating "pattern of illegal drug trafficking and possession" during the decade preceding his federal conviction. Third, the district court emphasized Lawson's "extensive prison disciplinary record"—about a dozen and a half disciplinary violations in all, including recent infractions for assault and illegal possession of drugs and weapons. Although the district court recognized that Lawson completed several education classes while in prison, Lawson's "continued involvement with drugs and violent and insolent behavior while incarcerated" counseled against reducing his sentence.

Lawson takes issue with the district court's explanation. He posits that the district court needed to support its decision with a "significant justification" and not simply some of the reasons already baked into the Guidelines calculation, such as the nature of the offense and Lawson's

6

criminal history. But the "significant justification" language ties back to cases where the district court varied upward considerably from the "initial benchmark" Guidelines range. *See Gall v. United States*, 552 U.S. 38, 49–50 (2007). As discussed, the proper benchmark here (262 to 327 months) aligns with the sentence received, meaning no variance occurred. Instead, having properly calculated the Guidelines range, the district court met its remaining burden by adequately explaining its decision why the subsequent changes in the sentencing regime did not counsel for a reduced sentence. *Concepcion*, 142 S. Ct. at 2404–05.

In any event, a district court does not err in assigning "additional weight" to a defendant's criminal history and offense, even though the Guidelines certainly account for those factors in the generic. *See United States v. Nixon*, 664 F.3d 624, 626 (6th Cir. 2011) (underlying offense), *United States v. Johnson*, 934 F.3d 498, 501 (6th Cir. 2019) (criminal history). The district court's decision to do so seems especially appropriate here, where the offense driving its initial career-offender assessment concerned an Ohio statute of conviction that was removed from consideration only due to its breadth. *See Montanez*, 442 F.3d at 487. Put another way, nothing has changed to cast doubt on the specific nature of Lawson's past crimes or his individual risk for recidivism. The district court's thoughtful examination of Lawson's troubling criminal history is well taken. *Cf. United States v. Jerry*, 55 F.4th 1124, 1133 (7th Cir. 2022) (observing that a district court does not act unreasonably in considering the specifics of the defendant's past conduct to vary upward substantially, even if that past conduct is not categorically a predicate offense).

Lawson also objects to the district court's assessment of his conduct in prison. His objection, however, largely amounts to downplaying his many disciplinary infractions and, in turn, emphasizing the programming he has taken while incarcerated. Those arguments are not frivolous; reasonable minds could differ over their weight and whether, at bottom, Lawson should serve the

remainder of his sentence or be released several months earlier. As the district court has already thoughtfully considered the matters at hand, it is not our role to simply reconsider them anew. *See Gall*, 552 U.S. at 59 ("[I]t is not for the Court of Appeals to decide de novo whether the justification for a variance is sufficient or the sentence reasonable."). Instead, we "owe deference to the weight that the district court assigns to various relevant factors." *Ware*, 964 F.3d at 488. With that deference in mind, the district court here demonstrated that it adequately considered the totality of Lawson's prison record, requiring an affirmance. *Concepcion*, 142 S. Ct. at 2404–05.

## III.

For the reasons discussed above, we affirm the judgment of the district court.