GRIFFIN, J.
(pp. 935-43), delivered a separate dissenting opinion.
OPINION
PATRICK J. DUGGAN, District Judge.
Petitioner Christopher Solomon, currently serving a 240-month sentence following his conviction in the United States District Court for the Southern District of Ohio for knowingly and intentionally possessing with the intent to distribute crack cocaine, appeals the district court’s denial of his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. Raising on its own initiative the statute of limitations set forth in the Anti-terrorism and Effective Death Penalty Act of 1996 (“AEDPA”), Pub. L No. 104-132, 110 Stat. 1214, the district court found Petitioner’s Section 2255 motion untimely. The district court further concluded that Petitioner was not entitled to equitable tolling and therefore dismissed his motion. We find it unnecessary to decide whether the district court erred in sua sponte raising the AEDPA’s statute of limitations, because we conclude that Petitioner was entitled to equitable tolling.[1] We therefore REVERSE the orders of the district court and REMAND to the district court for a decision on the merits of Petitioner’s Section 2255 motion.
*930 Factual and Procedural Background
In 1992, Petitioner was tried and convicted of distribution of crack cocaine and sentenced to 240 months imprisonment. He unsuccessfully appealed his conviction and sentence. United States v. Soloman, case 92-3892, 1993 WL 147569 (6th Cir. May 5, 1993) (unpublished opinion).
On January 27, 1997, Petitioner filed a motion in the district court requesting transcripts from his criminal case in order to file a Section 2255 motion. Attached to Petitioner’s motion was a completed Application to Proceed in Forma Pauperis. Petitioner indicated on this application that he was filing a motion pursuant to Section 2255.
On April 10, 1997, Petitioner filed a motion in the district court entitled “Motion of Notification of Intent to File 28 U.S.C. § 2255 Habus [sic] Corpus to Vacate, Set Aside, or Correct Sentence.” In this motion, Petitioner states that he intends to file a Section 2255 motion but “[d]ue to circumstances beyond his control, it is very unlikely that he will be able to file his ... motion before the April 24, deadline set by Congress.” Petitioner explains those circumstances as follows:
The reason for Inmate Solomon’s delay in filing this motion is due to his transfer from the Federal prison in Marion, IL., on March 19, 1997. (At which time he was in the progress of completing his 28 U.S.C. § 2255 motion.) He arrive[d] at the prison in Memphis, TN., on March 27, 1997, to secure his presence as a witness, for a trial that is to be held in Memphis on April 29, 1997. Due to inmate Solomon[’s] presence at the Federal prison at Memphis, [he w]as separated him from his legal work at the prison in Marion, IL., until his return. Also, due to inmate Solomon being tran[s]fer[red] from a high security prison to a low security one — has resulted in his being placefd] in segregated housing; Which has prevented] him from any access to any legal material.
On April 14, 1997, Petitioner filed a motion asking the district court to expedite its ruling on his previously filed motion for transcripts, which the district court had not yet addressed. In this motion, Petitioner again states his intent to file a Section 2255 motion, that he is attempting to file the motion by the April 24 deadline, and that without the transcripts he must rely on his memory to present his arguments. The district court took no action on Petitioner’s requests for transcripts.
On June 26, 1997, Petitioner filed his Section 2255 motion in which he raises eight claims challenging his conviction. Petitioner signed and dated his motion on June 22, 1997. On August 27, 1997, the district court issued an order directing the government to file a response to the petition. The government filed its response on September 30, 1997, addressing only the merits of Petitioner’s claims.
After Petitioner filed a reply to the government’s response on November 21, 1997, he filed additional motions asking the district court to stay the proceedings, grant his request for transcripts, and allow him time to review the transcripts and amend his Section 2255 motion if necessary. On March 2, 1999, almost fifteen months after Petitioner filed his reply and without addressing the motions Petitioner filed in the interim or his January 27 and April 14, 1997 motions requesting transcripts, the district court referred Petitioner’s Section 2255 motion to a magistrate judge for disposition and/or recommendation.
Less than two weeks later, the magistrate judge filed his Report and Recommendation (“R & R”) in which he sua sponte raised the AEDPA’s statute of limitations and recommended that Petitioner’s *931 motion be dismissed because it was filed more than sixty days after expiration of the April 24, 1997, grace period for filing habeas petitions after the AEDPA’s enactment.[2] The magistrate judge determined that the AEDPA’s statute of limitations is subject to equitable tolling, but, applying the “rare and exceptional circumstances” test, concluded that Petitioner failed to prove that he is entitled to relief. The magistrate judge reasoned:
[Petitioner] has offered no explanation of why he delayed from May, 1993, to March, 1997, to prepare his § 2255 Motion, except his request for transcripts. There is no requirement that a § 2255 Motion be accompanied by transcripts, and Mr. Solomon eventually filed his Motion without them. He complains in his Response that he does not have the transcripts, but then proceeds to tell his story of what happened in the crime and what happened afterwards between himself and his trial attorney, none of which would be reflected in the transcripts.[3]
Petitioner filed objections to the R & R, contending that equitable tolling should apply under the circumstances presented.
On April 13, 1999, the district court issued a one and a half page order adopting and incorporating by reference the R & R. In the order, the district court states that it conducted “a de novo review of the record, especially in light of Mr. Solomon’s objections.” Despite the fact that the R & R did not address the merits of the petition, the court summarizes the magistrate judge’s opinion as “concluding] that none of the claims raised by defendant is meritorious and therefore recommending] that defendant’s Motion to Vacate be denied on its merits.”
Petitioner filed a motion for reconsideration on April 26, 1999, in which he again asserted reasons for his delay in filing his Section 2255 motion.[4] On November 29, 2000, the district court appointed counsel to represent Petitioner. Petitioner, through counsel, then filed a memorandum in support of Petitioner’s motion for reconsideration on May 3; 2001. In this memorandum, Petitioner pointed out that the magistrate judge’s R & R never addressed the merits of the petition. Petitioner further argued that he was entitled to equitable tolling, that the district court erred in not conducting a hearing to'enable Petitioner to develop and establish why he was entitled to equitable tolling, and that the district court should have tolled the running of the limitations period when Petitioner filed his notice of intent to file a Section 2255 motion. Petitioner also asked the court to vacate its April 13 order because, Petitioner argued, the court apparently misconstrued and misinterpreted the R & R as addressing the merits of the Section 2255 motion.
*932 On April 2, 2003, the district court conducted a status conference. At the conference, Petitioner’s counsel apparently raised the issue of whether the court had the authority t j dismiss the petition on procedural grounds in light of Scott v. Collins, 286 F.3d 923 (6th Cir.2002),[5] which had been issued in the interim. The status conference continued on May 21, 2003, and the following day the district court issued an order granting Petitioner 60 days to present additional evidence to support his motion for reconsideration, requiring the government to file a response 20 days thereafter, and allowing Petitioner to file a reply 10 days later.
It does not appear from the record that Petitioner presented additional evidence. There apparently was some confusion among the parties after the district court’s May 22, 2003 order, however, regarding the issues the district court wanted them to address in their supplemental pleadings (perhaps because the magistrate judge recommended denial of the Section 2255 motion based on the statute of limitations but the district court referred to the merits of the petition when it adopted the R & R, or perhaps because of the discussion of Scott at the status conference). The district court therefore scheduled an additional status conference for May 10, 2004. Prior to the conference, on February 26, 2004, the government filed a “supplemental response” in which it argued that Scott does not apply to Section 2255 motions filed by federal prisoners.
On March 24, 2004, the district court issued an order denying Petitioner’s motion for reconsideration. The court concluded that Scott is inapplicable to Section 2255 motions and that the magistrate judge therefore correctly recommended the dismissal of Petitioner’s motion. The district court then identified the factors relevant to determining the appropriateness of equitable tolling set forth in Dunlap v. United States, 250 F.3d 1001, 1008 (6th Cir.2001), but, without addressing those factors, concluded that Petitioner was not entitled to equitable tolling. Focusing on the merits of the claims raised in Petitioner’s Section 2255 motion, rather than on the statute of limitations issue, the district court also concluded that Petitioner was not entitled to a certificate of ap-pealability.
Petitioner thereafter filed an appeal and moved this Court for a certificate of ap-pealability. On November 22, 2004, this Court granted Petitioner’s request for a certificate of appealability with respect to the following issues:
1) Whether any issue regarding the timeliness of Petitioner’s Section 2255 motion was waived by the Government’s failure to raise a limitations defense in its response;
2) Whether any waiver by the Government was cured by the opportunities that Petitioner had to argue that his motion was timely;
3) Whether the limitations period should be tolled for equitable reasons.
Standard of Review
This Court reviews a district court’s decision on the issue of equitable tolling de novo where the facts are undisputed. Allen v. Yukins, 366 F.3d 396, 401 (6th Cir.2004).
*933 Equitable Tolling
We apply the following factors to determine whether equitable tolling is appropriate: (1) the petitioner’s lack of notice of the filing requirement; (2) the petitioner’s lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one’s rights; (4) absence of prejudice to the respondent; and (5) the petitioner’s reasonableness in remaining ignorant of the legal requirement for filing his claim. Dunlap, 250 F.3d at 1008 (adopting factors set forth in Andrews v. Orr, 851 F.2d 146 (6th Cir.1988)). These five factors are not comprehensive, nor is each factor relevant in all cases. Cook v. Stegall, 295 F.3d 517, 521 (6th Cir.), cert. denied, 537 U.S. 1091, 123 S.Ct. 699, 154 L.Ed.2d 638 (2002). “The propriety of equitable tolling must necessarily be determined on a case-by-case basis.” Truitt v. County of Wayne, 148 F.3d 644, 648 (6th Cir.1998). This Court has cautioned, however, that equitable tolling should be granted sparingly. Dunlap, 250 F.3d at 1008-09.
Petitioner concedes that he was aware of the AEDPA’s one-year grace period “at the turn of 1997.” Additionally, the government does not claim (and the district court did not find) any prejudice as a result of Petitioner’s delay in filing his petition. We therefore must focus our inquiry on the third and fifth factors in the five-prong test set forth above. See Vroman v. Brigano, 346 F.3d 598, 605 (6th Cir.2003). Again, those factors are petitioner’s diligence in pursuing his rights and his reasonableness in remaining ignorant of the legal requirement for filing his claim.
We will first consider Petitioner’s reasonableness in remaining ignorant of the AEDPA’s limitations period. As Petitioner informs us, he was ignorant of Congress’ adoption of a one-year limitations period for habeas petitions from April 1996, when the statute was enacted, until “the turn of 1997.” This delay does not appear unreasonable in light of Petitioner’s explanation that “[d]ue to the circumstances that exist at Marion, there is poor circulation of information on changing laws available to inmates.”
With respect to Petitioner’s diligence in pursuing his rights, Petitioner provides the following description of his activities after learning of the AEDPA’s limitations period. At the time, he was incarcerated in Marion, Illinois, where inmates gained access to the law library on a rotational basis.[6] Petitioner explains that during the first few months of 1997, “there was great competitiveness amongst the inmates jock-ing [sic] for time in the small unit library at Marion because of the AEDPA time limitation.” Petitioner provides that he “diligently worked day and night studying and preparing his 2255 ... until his unsuspected departure to Memphis on March 19, 1997.” It was during this time period, specifically on January 27, 1997, that Petitioner filed a motion in the district court requesting transcripts he indicated he *934 “needs ... in order to file” his Section 2255 motion.
On March 19,1997, Petitioner was transferred without his legal materials to a facility in OMahoma, where he was placed in administrative detention pending his transfer to Memphis, Tennessee. Upon learning that he was being transferred to Memphis to secure his presence as a witness in an upcoming trial, Petitioner immediately asked staff members at the Oklahoma facility to provide him with the address or phone number of the Clerk of the District Court in Cincinnati. According to Petitioner, he wanted to inform the court of his situation.
When he arrived at the Memphis facility — a low security prison — Petitioner was housed in segregated housing due to his maximum security classification. While he attempted to use the law library, he claims access was even more restricted than in Marion. Petitioner continued to seek the address or phone number of the Clerk of the District Court in Cincinnati, and eventually a staff member arranged for Petitioner to call the court. According to Petitioner, he explained his predicament to one of the court clerks and was advised by the clerk to file a “Notification of Intent”' to file his 2255 motion. Petitioner claims that he called the court a second time to learn how to caption the motion and what he should state in the body of the motion. Heeding that advice, on April 3,1997, Petitioner signed and forwarded to the district court his “Motion of Notification of Intent to File 28 U.S.C. § 2255 Habeas Corpus to Vacate, Set Aside, or Correct Sentence.” On May 29, 1997, Petitioner was returned to Marion and within a month completed his Section 2255 motion. These facts demonstrate that Petitioner diligently pursued his rights once he became aware of the AEDPA’s statute of limitations.
Relying on this Court’s decision in Cook, 295 F.3d at 521-22, the government argues that Petitioner is not entitled to equitable tolling because he has no excuse for “sitting on his claims” from the time his conviction and sentence became final sometime in 1993 until he began preparing his Section 2255 motion in January 1997. There are at least two reasons why Cook is distinguishable from Petitioner’s case. First, the petitioner in Cook filed his habe-as petition almost twelve years after his conviction became final. 295 F.3d at 518. Second, Cook’s only excuse for filing the petition almost a month after the grace period expired was that the prison copier was broken a few days before the petition was due. Id. at 519, 521-22. Here, Petitioner was impeded from completing his petition more than one month before it was due and one month thereafter because of his transfer to other facilities to secure his testimony in a trial. Additionally, pri- or to preparing his Section 2255 motion, Petitioner was not sleeping on his rights. Instead, Petitioner was taking steps he believed were necessary to craft his legal motion. As Petitioner explains, based on the procedure for filing motions for habeas relief prior to Congress’ adoption of a statute of limitations in the AEDPA, he believed “he had time to enhance his knowledge of the law, while raising his level of formal education.”
We do not fault Petitioner for any delay in pursuing his rights based on his efforts — or lack thereof — before the one-year limitations period was enacted. As the magistrate judge noted in his R & R, prior to the enactment of the AEDPA, “a habeas petitioner could file at any time.” In fact, before the one-year statute of limitations was adopted, even a twenty-five year delay in filing a habeas petition did not bar its consideration, provided there was no prejudice to the government from the delay. See, e.g., Buchanon v. Mintzes, *935 734 F.2d 274, 281 (6th Cir.1984)(concluding that delay of 25 years in mounting federal habeas corpus challenge to guilty pleas did not bar petitioner’s claim where state had not been prejudiced in its ability to respond to the claims); see also Strahan v. Blackburn, 750 F.2d 438, 441-43 n. 4 (5th Cir.1985)(surveying all appellate level cases applying former Rule 9(a) of the Rules Governing Section 2254 cases, which employ the doctrine of laches to determine whether a petition must be dismissed due to delay, and citing cases declining to dismiss petitions where delay was as lengthy as twenty years).
Based on the above, we conclude that this is an appropriate case to equitably toll the AEDPA’s statute of limitations. Petitioner’s Section 2255 motion therefore is not time-barred and should be reviewed on its merits. Accordingly, the case will be remanded to the district court.
Petitioner argues that on remand this case should be reassigned to a different district court judge. Pursuant to 28 U.S.C. § 2106, we have the authority to order the reassignment of a case on remand. Reassignment, however, “is an ‘extraordinary power and should be rarely invoked ... Reassignments should be made infrequently and with the greatest reluctance.’ ” Sagan v. United States, 342 F.3d 493, 501 (6th Cir.2003)(quoting Armco, Inc. v. United Steelworkers of Am., AFL-CIO, Local 169, 280 F.3d 669, 683 (6th Cir.2002)). To determine whether reassignment is necessary, we consider (1) whether the original judge would reasonably be expected to have substantial difficulty in putting out of his or her mind previously expressed views or findings; (2) whether reassignment is advisable to preserve the appearance of justice; and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness. Id. (citation omitted).
We conclude that reassignment is not necessary in this case. There is a benefit to having the district court judge who presided over the defendant’s trial review the defendant’s subsequently filed Section 2255 motion. It may not be necessary to call the district judge as a witness, as Petitioner suggests, because a district judge simply may rely on his or her recollections of the criminal proceedings in deciding a Section 2255 motion without testifying. See Blanton v. United States, 94 F.3d 227, 235 (6th Cir.1996)(citing Blackledge v. Allison, 431 U.S. 63, 74 n. 4, 97 S.Ct. 1621, 1629 n. 4, 52 L.Ed.2d 136 (1977)). While the district court’s handling of Petitioner’s request for habeas relief was not correct, we do not find that it was based on any improper conceptions regarding the merits of Petitioner’s claims.
Accordingly, this matter is REMANDED to the United States District Court for the Southern District of Ohio for consideration of the merits of the petition for habe-as corpus relief.

. On April 25, 2006, the Supreme Court issued its decision in Day v. McDonough, - U.S. -, 126 S.Ct. 1675, 164 L.Ed.2d 376, that in the circumstances presented in the case, it was proper for the district court to raise the AEDPA's statute of limitations on its own initiative and dismiss a state prisoner’s habeas corpus petition, filed pursuant to 28 U.S.C. § 2254. Following Day, Petitioner and the government filed letter briefs in this case. The government urged this Court to apply Day in the Section 2255 context; Petitioner argued that distinctions between the relevant statutes of limitation render Day inapplicable to Section 2255. We will leave that issue for another panel, as we find it unnecessary to reach the issue in order to resolve Petitioner's appeal.

.There was no statute of limitations governing the filing of habeas petitions when Petitioner's conviction and sentence became final. While Petitioner was serving his sentence, however, Congress enacted the AEDPA, which added a one-year limitations period for motions filed pursuant to Section 2255, as well as petitions for a writ of habeas corpus filed pursuant to Section 2254. 28 U.S.C. §§ 2244(d)(1) & 2255. The AEDPA became effective on April 24, 1996. Petitioners whose convictions became final before the enactment of the AEDPA were provided a one-year grace period until April 24, 1997, to file motions seeking habeas corpus relief. Hyatt v. United States, 207 F.3d 831, 832 (6th Cir.2000).

. While transcripts may not be required, it certainly is understandable that a petitioner would like the transcripts to assist in his or her preparation of a habeas corpus petition.

. As indicated infra, the district court did not rule on Petitioner's motion for reconsideration until March 24, 2004.

. In Scott, a panel of this Court held, in the context of a petition filed pursuant to 28 U.S.C. § 2254, that the AEDPA’s statute of limitations is an affirmative defense that is waived if not timely raised. 286 F.3d at 927. The Scott court further held that a court’s "sua sponte dismissal ... [is] an impermissible curing of the [Government's] waiver.” Id. at 930. As suggested supra, the Supreme Court’s decision in Day abrogates Scott.

. In his objections to the magistrate judge’s R & R, Petitioner described the process by which Marion inmates obtain legal materials:
Access to the Law Library is non-existence [sic]. Every unit has a cell-like room with less than a hundred law book[s] pertaining to Federal statutes only. There is a typ[e]writer that is shared with a connecting unit, and is available upon pre-request and only if an inmate in the connecting unit has not requeste[d] it first. In order to receive books with case citing, an inmate has to sent [sic] a note to the school department the night in advance, and is only allow[ed] three books a day. An inmate must cite the case number in order to receive the book the following day.