RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 23a0059p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee*,

    *v.*

WILLIAM SERRANO DOMENECH (21-1434); ALEJANDRO
SERRANO DOMENECH (21-1466),

        *Defendants-Appellants*.

> Nos. 21-1434/1466

─────────────────

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:06-cr-00245—Janet T. Neff, District Judge.

Decided and Filed:  March 31, 2023

Before:  MOORE, STRANCH, and MURPHY, Circuit Judges.

─────────────────

## COUNSEL

─────────────────

**ON BRIEF:**  Elizabeth A. LaCosse, FEDERAL PUBLIC DEFENDER'S OFFICE, Marquette, Michigan, for Appellant in 21-1434.  Paul L. Nelson, Jasna Tosic, FEDERAL PUBLIC DEFENDER'S OFFICE, Grand Rapids, Michigan, for Appellant in 21-1466.  Hagen W. Frank, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee.

    STRANCH, J., delivered the opinion of the court in which MOORE, J., joined. MURPHY, J. (pp. 9–19), delivered a separate dissenting opinion.

─────────────────

## OPINION

─────────────────

    JANE B. STRANCH, Circuit Judge.  Brothers Alejandro and William Domenech appeal the district court's denial of their motions for sentence reductions under the First Step Act.  They

argue that the district court failed to consider relevant arguments regarding nonretroactive changes of law and did not provide sufficiently compelling justifications for leaving their sentences intact. We **VACATE** the district court's orders and **REMAND** the case for reassignment and reconsideration under the Supreme Court's recent decision in *Concepcion v. United States*, 142 S. Ct. 2389 (2022), and this opinion.

## I. BACKGROUND

Alejandro and William Domenech[1] were indicted on various drug and firearm offenses in 2006. Both were ultimately convicted of possession of crack cocaine with intent to distribute; possession of marijuana with intent to distribute; possession of a firearm in furtherance of a drug trafficking crime; and felon in possession of a firearm. Additionally, Alejandro was convicted of possession of counterfeit federal reserve notes.

At William's initial sentencing in 2008, the court calculated a Guidelines range of 140 to 175 months, with a mandatory consecutive term of 60 months. The court sentenced William to 234 months' imprisonment—the high end of his Guidelines range less one month. The court's sentencing memorandum cited the dangerousness of the underlying offenses, William's criminal history, and his need for substance abuse treatment as justifications for its sentence.

Alejandro faced greater penalties. Based on prior state convictions for armed robbery and attempted drug trafficking, Alejandro was classified as a career offender, a designation that resulted in a Guidelines range of 360 months to life followed by the mandatory consecutive term of 60 months. The court sentenced Alejandro to the low end of that range, resulting in a sentence of 420 months' imprisonment. The court cited the dangerousness of the underlying offenses, that Alejandro's criminal history was "escalating in seriousness," and his post-arrest behavior at court proceedings as justifications for its sentence.

A few years after the brothers were sentenced, Congress passed the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372 (2010), which aimed to alleviate sentencing disparities between cocaine offenses and crack cocaine offenses by increasing the crack offenses'

---

[1]For clarity and simplicity, we refer to each defendant by his given name rather than their common surname.

drug weight thresholds.  *See United States v. Boulding*, 960 F.3d 774, 777 (6th Cir. 2020).  But the Fair Sentencing Act was not retroactive and therefore did not provide relief to the Domenech brothers.  *See Dorsey v. United States*, 567 U.S. 260, 264 (2012).  The brothers' eligibility for relief changed following the enactment of the First Step Act of 2018, which made provisions of the Fair Sentencing Act retroactive.  *Boulding*, 960 F.3d at 777.  Both brothers subsequently moved for sentence reductions under the First Step Act.  For William, the district court calculated an amended Guidelines range of 120 to 150 months.  The court calculated an amended Guidelines range of 262 to 327 months for Alejandro.  The court denied both motions in 2019.

Both brothers appealed, and we vacated the district court's orders, remanding for "reconsideration of a sentence modification under the dictates of the First Step Act."  *United States v. Domenech*, 819 F. App'x 341, 344 (6th Cir. 2020).  We held that:

> The district court failed to treat the brothers' reduced ranges as "the starting point and the initial benchmark" for its decision, [*United States v. Smith*, 959 F.3d 701, 703 (6th Cir. 2020)] (citation omitted), and the court's analysis lacked "thorough *renewed* consideration of the § 3553(a) factors," [*United States v. Boulding*, 960 F.3d 774, 783–84 (6th Cir. 2020)] (emphasis added). Instead, the court primarily relied on its analysis at the brothers' original sentencing hearings. Yes, the court considered "the scale and harm of [the brothers'] criminal conduct" and their "risk for recidivism," but, as we found in *Smith*, these considerations already "are accounted for within the guidelines calculation" and thus do not provide "sufficiently compelling justification" for leaving in place a sentence well above the amended Guidelines range. *Smith*, 959 F.3d at 704.  Accordingly, the district court failed to engage in sufficient review of the brothers' motions and thereby abused its discretion.

*Id.*

On remand, another round of briefing occurred in both cases.  As part of their arguments for reduced sentences, both brothers pointed to non-retroactive changes affecting the Guidelines.  Alejandro cited our holding in *United States v. Havis* that attempt crimes are not predicate offenses for purposes of the career offender enhancement.  *See* 927 F.3d 382, 386-87 (6th Cir. 2019) (en banc) (per curiam).  Alejandro argued that, if he were sentenced today, he would no longer be designated a career offender and would be subject to a Guidelines range of 140 to 175 months, which is substantially lower than his amended Guidelines range of 262 to 327 months.  William pointed to the Sentencing Commission's 2010 Amendment 742, which eliminated

"recency" points in calculating a defendant's criminal history score. At the time of William's initial sentencing, defendants received "recency" points if the instant offense occurred within two years after release of another offense scored under the Guidelines. William argued that if that amendment applied to him, his Guidelines range would be 110 to 137 months, even lower than his amended Guidelines range of 120 to 150 months.

The district court again denied the motions. Using almost identical language throughout its analysis in the two separate opinions, the court reasoned that after "having given a thorough renewed consideration of the [§ 3553(a)] sentencing factors" the brothers' original sentences should remain intact. Alejandro's sentence would remain 420 months' imprisonment. The core term of 360 months represents an upward variance from his amended Guidelines range of 262 to 327 months. William's sentence would remain 234 months' imprisonment. His core term of 174 months also represents an upward variance from his amended Guidelines range of 120 to 150 months.

The brothers again appeal the district court's order denying their First Step Act motions. After the opening briefs were filed in each case, we granted the brothers' motions to hold the cases in abeyance pending the Supreme Court's opinion in *Concepcion v. United States*, 142 S. Ct. 2389 (2022). The Supreme Court published *Concepcion* on June 27, 2022, and the brothers filed reply briefs shortly thereafter arguing that *Concepcion* supported their arguments for remand.

## II. ANALYSIS

We review a district court's denial of relief under the First Step Act for an abuse of discretion. *United States v. Smith*, 959 F.3d 701, 702 (6th Cir. 2020). "A district court abuses its discretion when it applies the incorrect legal standard, misapplies the correct legal standard, or relies upon clearly erroneous findings of fact." *Id.* (quoting *United States v. Moore*, 582 F.3d 641, 644 (6th Cir. 2009)).

The brothers argue that *Concepcion* warrants remand because the district court failed to consider their arguments regarding nonretroactive changes to the Guidelines. If remanded, they argue that their cases should be reassigned to a different district judge.

In 2018, Congress passed the First Step Act, which "authorized district courts to 'impose a reduced sentence' for qualifying movants 'as if sections 2 and 3 of the Fair Sentencing Act . . . were in effect at the time the covered offense was committed.'" *Concepcion*, 142 S. Ct. at 2397 (quoting Pub. L. 115-391, § 404(b), 132 Stat. 5222). In *Concepcion*, the Supreme Court sought to resolve the disagreement "as to whether a district court deciding a First Step Act must, may, or may not consider intervening changes of law or fact." *Id.* at 2398. The defendant in *Concepcion*, like the brothers in this case, argued that based on nonretroactive Guidelines changes, he would no longer be considered a career offender if sentenced after those changes. *Id.* at 2397. The Court held that nothing prohibits a district court from considering intervening changes of law or fact in adjudicating a First Step Act motion and, moreover, that a district court is required to consider such changes when raised by a party to the proceeding:

> Because district courts are always obligated to consider nonfrivolous arguments presented by the parties, the First Step Act requires district courts to consider intervening changes when parties raise them. By its terms, however, the First Step Act does not compel courts to exercise their discretion to reduce any sentence based on those arguments.

*Id.* at 2396. Relevant to this appeal, the Court specifically noted that district courts have properly "considered nonretroactive Guidelines amendments to help inform whether to reduce sentences at all, and if so, by how much," and referred to such changes as "relevant and probative information." *Id.* at 2403.

*Concepcion* thus clears any confusion regarding intervening changes and specifies a framework for First Step Act cases. After finding that a defendant is eligible for relief, a district court should first calculate a movant's amended Guidelines range, reflecting only the retroactive application of the Fair Sentencing Act. *Id.* at 2402 n.6. The district court may then consider all relevant information, including nonretroactive changes, "in selecting or rejecting an appropriate sentence, with the properly calculated Guidelines range as the benchmark." *Id.*

The brothers each identify a nonretroactive change that would provide a lower Guidelines range were they sentenced today. For example, Alejandro argues that *Havis*'s holding would erase the career offender enhancement, subjecting him to a Guidelines range of 140 to 175 months if he were sentenced today. That range is lower than his amended Guidelines range of

262 to 327 months and substantially lower than his original range of 360 months to life. *Concepcion* confirms that a district court is required to consider that argument. *Id.* at 2302-04.

The district court acknowledged that the brothers made arguments regarding nonretroactive changes but noted that it was "permitted, but not required, to *consider*" them, citing *United States v. Maxwell*, 991 F.3d 685 (6th Cir. 2021). (Op. and Order, R. 360, PageID 2836; Op. and Order, R. 361, PageID 2847) (emphasis added). The court explained:

> In *Maxwell*, the Sixth Circuit held that the First Step Act "tells the court to alter just one variable in the original sentence, not all variables," and to sentence a defendant "'as if' the crack-cocaine sentencing range had been reduced under the Fair Sentencing Act of 2010, not as if other changes had been made to sentencing law in the intervening years."

(Op. and Order, R. 360, PageID 2836; Op. and Order, R. 361, PageID 2847 (citing *Maxwell*, 991 F.3d at 689)). Though *Maxwell*'s language finds support in *Concepcion*, that passage concerns the initial calculation of a movant's amended Guidelines range; it does not bar a district court from considering other relevant and probative information after accurately calculating the amended Guidelines range. *See Maxwell*, 991 F.3d at 689; *Concepcion*, 142 S. Ct. at 2402 n.6. The district court acknowledged but did not consider and "make clear that it 'reasoned through [the parties'] arguments'" regarding nonretroactive changes, which *Concepcion* expressly requires. 142 S. Ct. at 2404 (quoting *Maxwell*, 991 F.3d at 693 (alteration in *Concepcion*)). Given that the district court did not have the benefit of *Concepcion*, that is understandable. Nonetheless, remand is appropriate so the district court can consider and reason through all nonfrivolous arguments raised by the brothers, consistent with *Concepcion*.

In sum, *Concepcion* holds that district courts can consider all relevant information, subject only to constraints by Congress or the Constitution, when discharging "their responsibility to sentence the whole person before them." *Id.* at 2398. We have previously noted that because "Congress was the actor that lowered" defendants' Guidelines ranges under the First Step Act, the amended Guidelines ranges stand on "stronger ground." *Smith*, 959 F.3d at 703. Additionally, nonretroactive changes are clearly "relevant and probative information," *Concepcion*, 142 S. Ct. at 2403, as they reflect the evolving judgment regarding the wrongfulness of a defendant's underlying conduct. Ultimately, of course, it is the district court's

decision "whether to reduce sentences at all, and if so, by how much." *Id.* But the district court must still "*adequately* explain the chosen sentence," *Gall v. United States*, 552 U.S. 38, 51 (2007) (emphasis added), to provide a basis for appellate review.

On remand, the brothers request reassignment of their cases to another district judge on the grounds that the original judge has evidenced an unwillingness to reevaluate their sentences following the legal developments discussed earlier. We may order the reassignment of a case on remand pursuant to 28 U.S.C. § 2106. *See Solomon v. United States*, 467 F.3d 928, 935 (6th Cir. 2006). To determine whether reassignment is necessary under § 2106, we consider three factors:

> (1) whether the original judge would reasonably be expected to have substantial difficulty in putting out of his or her mind previously expressed views or findings;
>
> (2) whether reassignment is advisable to preserve the appearance of justice; and
>
> (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.

*Rorrer v. City of Stow*, 743 F.3d 1025, 1049 (6th Cir. 2014) (quoting *U.S. ex rel. Williams v. Renal Care Grp., Inc.,* 696 F.3d 518, 532–33 (6th Cir. 2012)). When weighing these factors, we are mindful that "[r]eassignment is an extraordinary power and should be rarely invoked." *Id.* (quoting *U.S. ex rel. Williams*, 696 F.3d at 533).

We conclude that reassignment is necessary. In *Domenech*, we held that the district court "failed to treat the brothers' reduced [Guidelines] ranges as the starting point and the initial benchmark for its decision, and the court's analysis lacked thorough *renewed* consideration of the § 3553(a) factors." 819 F. App'x at 344 (internal quotation marks and citations omitted). On remand, the district court committed the same error. The court's orders, though longer than its earlier ones, again gloss over the brothers' amended Guidelines ranges and focus almost exclusively on their offense conduct and criminal histories. It is not until the final paragraph of each order that the district court explains, in nearly identical passages, that the brothers' motions for sentence reductions were being denied for the reasons stated at their original sentencings. The district judge's failure to engage with the brothers' arguments despite our decision in *Domenech* raises significant concern as to whether the judge can be reasonably expected to reevaluate her earlier views and findings. *Cf. United States v. Bistline*, 720 F.3d 631, 634–35 (6th Cir. 2013). Given that the cases are being remanded to allow the district court to consider

additional arguments similar to the ones it failed to address in its two earlier orders, reassignment will preserve the appearance of justice by allowing the brothers' motions to be "heard by a judge whose impartiality cannot reasonably be questioned." *United States v. Cota-Luna*, 891 F.3d 639, 651 (6th Cir. 2018).

Although reassignment will require the expenditure of additional effort on the part of the assigned district judge, this factor does not outweigh the benefits of preserving the appearance of fairness in these cases. This decision resolves the last of the brothers' pending legal challenges, *cf. Rorrer*, 743 F.3d at 1051, and we are confident that the newly assigned judge will be able to familiarize herself with the record and resolve the brothers' motions for sentence reductions within a reasonable timeframe. Of course, we take no view of whether the assigned judge should in fact reduce either of the brother's sentences. We require only that the court "demonstrate that it has considered the arguments before it." *Concepcion*, 142 S. Ct. at 2405.

## III.  CONCLUSION

We **VACATE** the district court's orders and **REMAND** for reassignment to another district court judge and reconsideration of defendants' First Step Act motions consistent with the Supreme Court's decision in *Concepcion v. United States*, 142 S. Ct. 2389 (2022), and this opinion.

_____

**DISSENT**

_____


MURPHY, Circuit Judge, dissenting.  The Fair Sentencing Act of 2010 increased the quantity of crack cocaine required to trigger the mandatory minimum sentences in 21 U.S.C. § 841(b)(1) for illegally distributing this drug.  Pub. L. No. 111-220, § 2(a), 124 Stat. 2372, 2372.  But this law did not apply retroactively.  So the First Step Act of 2018 allowed defendants sentenced before the Fair Sentencing Act to move for a reduced sentence "as if" that law's changes "were in effect at the time" of their offense.  Pub. L. No. 115-391, § 404(b), 132 Stat. 5194, 5222.

In this case, Alejandro and William Domenech moved for sentence reductions under the First Step Act.  When the district court ruled on their motions, our caselaw had sent mixed messages on how to process them.  Some cases suggested that the district court must recalculate a defendant's guidelines range by incorporating all changes to the guidelines that had occurred since the defendant's original sentencing.  *See United States v. Boulding*, 960 F.3d 774, 784 (6th Cir. 2020).  Others held that the district court may recalculate the defendant's guidelines range by making only the relevant Fair Sentencing Act change.  *See United States v. Maxwell*, 991 F.3d 685, 689–90 (6th Cir. 2021).  The Domenech brothers asked the district court to follow the former approach.  But the district court denied their motions by siding with the latter one.  The Supreme Court has since sided with that approach too.  *Concepcion v. United States*, 142 S. Ct. 2389, 2402 n.6 (2022).  The Court has also clarified that district courts deciding these motions need not "articulate anything more than a brief statement of reasons."  *Id.* at 2404.  Because the district court's (largely identical) 11-page orders denying the Domenech brothers' motions fall comfortably within *Concepcion*'s non-demanding legal framework, I would affirm.

I

After Alejandro and William Domenech entered this country from Cuba, they amassed lengthy records.  Immigration authorities eventually ordered the government to remove them to Cuba, but that country refused to take them.  Op., R.360, PageID 2828; Op., R.361, PageID

2839.  In 2006, the police arrested the brothers at a hotel near Lansing, Michigan.  The brothers had committed several armed robberies in New Mexico, stealing drugs, firearms, and money.  They planned to sell the drugs in Michigan.  On their way there, they traveled with, among others, a runaway 15-year-old girl whom they had given drugs.  PSR, R.267, PageID 2321.  When the police confronted the brothers at the hotel, Alejandro forced the officers to use a taser by resisting arrest and attempting to destroy evidence.  *Id.*  William attempted to hide a firearm under a mattress.  Op., R.361, PageID 2840.  Apart from the drugs and firearms, the police also found $4,000 in counterfeit money.  Op., R.360, PageID 2829; *see also United States v. Domenech*, 675 F. App'x 519, 521 (6th Cir. 2017) (*Domenech II*).

The government charged Alejandro with six counts: (1) possessing firearms while in this country illegally, in violation of 18 U.S.C. § 922(g)(5)(A); (2) possessing with the intent to distribute at least 5 grams of crack cocaine, in violation of 21 U.S.C. § 841(a)(1); (3) possessing with the intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1); (4) possessing firearms in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1); (5) possessing firearms as a felon, in violation of 18 U.S.C. § 922(g)(1); and (6) possessing counterfeit money, in violation of 18 U.S.C. § 472.  The government charged William with only the first five counts.  A jury convicted them on all charges.  (During sentencing, the district court vacated the brothers' convictions for possessing firearms while in the country illegally due to double-jeopardy concerns.  Tr., R.191, PageID 1908–09; Tr., R.190, PageID 1882–83.)

At Alejandro's sentencing, the district court calculated his guidelines range as 360 months to life imprisonment for all counts except his conviction of possessing a firearm in furtherance of a drug-trafficking crime under § 924(c).  Tr., R.191, PageID 1930.  This lengthy range resulted from a finding that Alejandro was a career offender.  PSR, R.267, PageID 2248.  The § 924(c) offense triggered a separate mandatory 60-month sentence on top of the sentence for the other crimes.  Tr., R.191, PageID 1930.  The court thus imposed a total sentence of 420 months' imprisonment.  *Id.*, PageID 1935.

At William's sentencing, the court calculated his guidelines range on all counts except the § 924(c) conviction as 140 to 175 months' imprisonment.  Tr., R.190, PageID 1899.  The

§ 924(c) conviction again added a 60-month term on top of the sentence for the other crimes. *Id.* The court thus imposed a total sentence of 234 months' imprisonment. *Id.*, PageID 1902.

We affirmed both sentences on direct appeal. *United States v. Domenech*, 430 F. App'x 392, 397–99 (6th Cir. 2011) (*Domenech I*).

At the time of the sentencing hearings, the brothers' convictions for possessing with the intent to distribute at least 5 grams of crack cocaine triggered statutory mandatory minimum sentences. William's conviction triggered a mandatory minimum of 5 years' imprisonment. 21 U.S.C. § 841(b)(1)(B)(iii) (2006). Alejandro had a prior drug-felony conviction, so his conviction triggered a mandatory minimum of 10 years' imprisonment and a maximum of life. *Id.*

The Fair Sentencing Act later changed these statutory ranges. Section 2 of the Act increased the amount of crack cocaine required to trigger them from 5 grams to 28 grams. § 2(a)(2), 124 Stat. at 2372. Section 8 also ordered the Sentencing Commission to make immediate "conforming amendments" to the guidelines "to achieve consistency with other guideline provisions and applicable law." *Id.* § 8(2), 124 Stat. at 2374. The Commission issued emergency amendments in October 2010 and later made them permanent in Amendment 750. *See* Sentencing Guidelines for United States Courts, 75 Fed. Reg. 66,188 (Oct. 27, 2010); U.S.S.G. app. C, amend. 750 (2011). But the Act's changes did not apply retroactively to the Domenech brothers. *See United States v. Blewett*, 746 F.3d 647, 650 (6th Cir. 2013) (en banc).

Four years after the Fair Sentencing Act, the Commission issued Amendment 782. U.S.S.G. supp. app. C, amend. 782 (2014). This amendment reduced the base offense level for most drug offenses, including offenses that do not involve crack cocaine, by two levels. *See Hughes v. United States*, 138 S. Ct. 1765, 1774 (2018). The Commission made the amendment retroactive by allowing eligible defendants to seek a reduced sentence under 18 U.S.C. § 3582(c)(2). *See Hughes*, 138 S. Ct. at 1774; *see also* U.S.S.G. supp. app. C, amend. 788 (2014).

The Domenech brothers both sought a reduced sentence under Amendment 782. The district court summarily rejected Alejandro's request. He did not qualify for this relief because of his career-offender status. Op., R.270, PageID 2279.

William's motion required more attention. When originally calculating his base offense level, the court had held him responsible for 219.7 kilograms of marijuana. PSR, R.282, ¶ 68, PageID 2325–26. Because the police had found the brothers with various drugs (crack cocaine, methamphetamine, heroin, ecstasy, and marijuana), this quantity resulted from converting all the drugs into a single amount of marijuana using a guidelines formula. *Id.*; U.S.S.G. § 2D1.1, cmt. n.10(B), (D), (E) (2007). The amount gave William a base offense level of 26, the level reserved for a quantity of marijuana between 100 and 400 kilograms. *See* U.S.S.G. § 2D1.1(c)(7) (2007).

To help resolve William's motion under Amendment 782, a probation officer issued a supplemental report calculating how this amendment affected his guidelines range. According to this officer, the emergency crack-cocaine changes under the Fair Sentencing Act and Amendment 750 reduced the drug quantity attributable to William from 219.7 kilograms of marijuana to 128.6 kilograms. Rep., R.285, PageID 2351–52. So William remained in the base offense level reserved for 100 to 400 kilograms of marijuana. But Amendment 782 separately reduced that level from 26 to 24. *Id.*, PageID 2351, 2353. With a lower total offense level, William's guidelines range changed from 140 to 175 months to 120 to 150 months (plus the 60-month consecutive sentence for his § 924(c) conviction). *Id.*, PageID 2353.

The district court denied William's motion for a reduced sentence under Amendment 782. The court reasoned that William remained "a danger to society and his conduct in prison suggests that he still has substance abuse problems as well as an affinity for dangerous weapons." Op., R.294, PageID 2387. It also found his "potential for recidivism" to be "high." *Id.* We affirmed this decision in a thorough opinion. We pointed to, among other evidence, William's "two infractions for possessing a dangerous weapon" in prison. *Domenech II*, 675 F. App'x at 524–26.

Four years after Amendment 782, Congress passed the First Step Act. It allowed a defendant convicted of a "covered offense" to seek a reduced sentence. § 404, 132 Stat. at 5222.

It defined "covered offense" as an offense "the statutory penalties for which were modified" by one of the relevant sections of the Fair Sentencing Act (section 2 or 3). *Id.* § 404(a). The Act also provided: "A court that imposed a sentence for a covered offense may, on motion of the defendant, . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." *Id.* § 404(b).

William and Alejandro both moved for a sentence reduction under the First Step Act at a time when our law was unclear on the process to follow. They argued that the court must conduct a full resentencing using the current guidelines and our current interpretation of them. *See* Supp. Br., R.314, PageID 2498–2505; Supp. Br., R.315, PageID 2506–12. The district court disagreed and denied both motions. As for Alejandro, the court suggested that the parties agreed that his guidelines range would be 262 to 327 months' imprisonment (not 360 months to life) "under current law[.]" Op., R.325, PageID 2581. But it held that his current sentence remained appropriate because of his lengthy (and increasingly serious) criminal history. *Id.* As for William, the court noted that his base offense level would fall from 26 to 24 "under the current Guidelines[.]" Op., R.326, PageID 2585. But it explained that it had just considered this "very issue" when denying his request for relief under Amendment 782. *Id.* It saw no "good reason" to depart from its prior analysis (the analysis that we had affirmed). *Id.*, PageID 2585–86.

We vacated its orders. *United States v. Domenech*, 819 F. App'x 341, 344 (6th Cir. 2020) (*Domenech III*). We held that the district court wrongly failed to treat the current guidelines range as the "initial benchmark" for the proper sentence and wrongly failed to engage in a "thorough *renewed* consideration of the § 3553(a) factors." *Id.* (first quoting *United States v. Smith*, 959 F.3d 701, 703 (6th Cir. 2020) (per curiam), and then quoting *Boulding*, 960 F.3d at 784).

On remand, the brothers argued that their guidelines ranges depended on current law. Alejandro argued that his prior offenses no longer made him a career offender after our decision in *United States v. Havis*, 927 F.3d 382 (6th Cir. 2019) (en banc) (per curiam). Mem., R.340, PageID 2662–64. He thus asserted that his guidelines range would now be 140 to 175 months' imprisonment (plus the 60-month consecutive sentence for the § 924(c) conviction). *Id.*, PageID 2664. William argued that his guidelines range would now be 110 to 137 months (plus the 60-

month consecutive sentence for the § 924(c) conviction) because of Amendment 782's offense level reduction and because of another amendment that would now reduce his criminal history category from VI to V.  Mem., R.339, PageID 2645.

After the parties' briefing in the district court, we continued to send conflicting guidance on how to process these motions.  In *Maxwell*, we clarified that our prior cases did not require courts to start from a defendant's guidelines range under current law.  991 F.3d at 690–91.  We instead held that the First Step Act required recalculation of the range using only the relevant Fair Sentencing Act changes, not other unrelated changes.  *Id.* at 689.  Yet we made clear that district courts could consider these other "legal and factual developments" when determining whether to reduce a sentence as a discretionary matter.  *Id.* at 691.  *Maxwell*'s approach conflicted with what we told the district court in *Domenech III*.

Such was the state of things when the district court issued its orders now under review. Its largely overlapping 11-page decisions denied reduced sentences to both brothers.  In Alejandro's case, the court held that the only legal change relevant to the First Step Act led to a reduced guidelines range between 262 and 327 months' imprisonment (322 to 387 months when considering the § 924(c) conviction).  R.360, PageID 2836.  The court recognized Alejandro's argument that he would not qualify as a career offender.  But it cited *Maxwell* for the proposition that it was "permitted, but not required," to apply guidelines changes unrelated to the First Step Act.  Op., R.360, PageID 2836.  The court found that an upward variance to the existing 420-month sentence was proper under the sentencing factors in 18 U.S.C. § 3553(a).  It noted, among other things, that Alejandro had a "lengthy and increasingly serious criminal history," that his current offenses were not typical drug convictions, and that it needed to protect the public from his future crimes.  *Id.*, PageID 2837.

In William's case, the court pointed to our suggestion in *Domenech III* that the parties had agreed that the guidelines range changed to 120 to 150 months' imprisonment (180 to 210 when considering the § 924(c) conviction).  Op., R.361, PageID 2846.  It recognized William's argument that his criminal history level would be lower under the current guidelines.  But it cited *Maxwell* for the proposition that it was "permitted, but not required, to apply other Guidelines changes."  *Id.*, PageID 2847.  It found that an upward variance to his existing 234-month

sentence was proper in light of the § 3553(a) factors, relying on the same rationales as it had for Alejandro.  *Id.*

II

As this lengthy history shows, our evolving caselaw has not been a model of clarity for the district court.  In my view, however, the Supreme Court's subsequent decision in *Concepcion* has now put this uncertainty to rest.

*Concepcion* adopted a two-step approach.  At step one, the Court held that the First Step Act requires courts to recalculate a defendant's guidelines range in a way that addresses *only* the Fair Sentencing Act's relevant changes.  *Concepcion*, 142 S. Ct. at 2402.  It explained that the First Step Act's "as if" text did not permit a court to recalculate a defendant's "benchmark" range using any changes other than those that "reflect the retroactive application of the Fair Sentencing Act."  *Id.* at 2402 n.6, 2403 n.8.  This guidelines range must then "anchor[]" the later sentencing inquiry.  *Id.* at 2402 n.6 (citation omitted).  At step two, the Court held that the First Step Act "allows" courts to consider "intervening changes" that are unrelated to Sections 2 and 3 of the Fair Sentencing Act when deciding as a discretionary matter whether to reduce a sentence (and, if so, by how much).  *Concepcion*, 142 S. Ct. at 2404.  A circuit split had developed over whether district courts were absolutely barred from considering these changes, *see id.* at 2398, and the Court condemned the courts that had held that they were, *see id.* at 2401–03.

The Court next provided general guidance on how district courts should process First Step Act motions.  They bear the "standard obligation" to consider the arguments raised by the parties and explain their decision in a way that shows that they have done so.  *Id.* at 2404.  A district court must "make clear that it 'reasoned through [the parties'] arguments.'"  *Id.* (quoting *Maxwell*, 991 F.3d at 693).  But the law leaves the required amount of writing up to the court's "professional judgement."  *Id.* (quoting *Chavez-Mesa v. United States*, 138 S. Ct. 1959, 1961 (2018)).  It may deny a motion simply with "a brief statement of reasons."  *Id.*  It also need not "'expressly rebut each argument' made by the parties" and remains free to "dismiss arguments that it does not find compelling without a detailed explanation."  *Id.* (quoting *Maxwell*, 991 F.3d at 694).

The Court also clarified our limited role in this process. The "broad" discretion that the Court placed in district courts necessitated "deferential appellate review." *Id.* Indeed, the First Step Act itself "confers particular discretion" and "does not 'require a court to reduce any sentence.'" *Id.* (quoting § 404(c), 132 Stat. at 5222). We may, of course, correct purely "legal errors in recalculating the Guidelines to account for the Fair Sentencing Act's changes[.]" *Id.* Otherwise, however, we must not engage in "overly searching" appellate review. *Id.*

*Concepcion* leaves me convinced that the district court in this case did not err by denying the brothers' motions. As far as I can tell, the court has never calculated their guidelines ranges using only the changes from the Fair Sentencing Act. If anything, then, the only potential errors that I see end up *favoring*—not *harming*—them. I will consider their claims in turn.

## A. Alejandro

*Concepcion* required the district court first to recalculate Alejandro's guidelines range considering only the relevant Fair Sentencing Act changes. 142 S. Ct. at 2402 & n.6. The court relied on our statement in *Domenech III* that the parties agreed that Alejandro's new range would be 262 to 327 months rather than 360 months to life (apart from his § 924(c) conviction). Op., R.360, PageID 2835. But *Domenech III* directed the court to recalculate the guidelines range using later legal changes—something that *Concepcion* prohibits. 819 F. App'x at 343–44.

*Concepcion* likely forecloses this lower range. Because Alejandro had a prior drug-felony conviction, the Fair Sentencing Act reduced the statutory range for his crack-cocaine offense from 10 years to life to 0 to 30 years. *Compare* 21 U.S.C. § 841(b)(1)(B), *with id.* § 841(b)(1)(C); *see* Notice, R.118, PageID 557. Yet Alejandro was convicted under § 924(c) for possessing a firearm during a drug-trafficking crime, and he received no acceptance-of-responsibility reduction. PSR, R.267, PageID 2235, 2247. His applicable range thus may have remained 360 months to life under the career-offender guideline for § 924(c) offenders. U.S.S.G. § 4B1.1(c)(2)–(3) (2007). This range (360 months to life) exceeds the range that would apply based on a combination of the otherwise applicable range for Alejandro's other convictions and his minimum 5-year sentence under § 924(c) (322 to 387 months). *See id.*; *see also id.* cmt. n.3(C)(ii), (E). If these calculations are correct, which I would think after

*Concepcion* the district court must address on remand, Alejandro requests a significant *downward* variance from his First Step Act guidelines range.

Regardless, even assuming a revised guidelines range of 322 to 387 months' imprisonment, the district court committed no processing error at *Concepcion*'s second step by refusing, as a discretionary matter, to reduce his 420-month sentence. *Concepcion* requires a district court only to "consider the parties' nonfrivolous arguments before it." 142 S. Ct. at 2404. Alejandro's arguments about intervening changes of law—primarily, his argument that he would no longer qualify as a career offender after *Havis*—all went into his claim that the district court *must* recalculate his guidelines range to be 140 to 175 months' imprisonment. Mem., R.340, PageID 2661–66. The court properly considered and rejected this argument about his guidelines range—an argument that *Concepcion* rejects. 142 S. Ct. at 2402 & n.6.

In response, Alejandro points to the district court's statement that it "is permitted, but *not required*, to consider changes in career offender designations." Op., R.360, PageID 2836 (emphasis added). He adds that *Concepcion* says that "the First Step Act *requires* district courts to consider intervening changes when parties raise them." 142 S. Ct. at 2396 (emphasis added). But again, Alejandro "raised" only the mistaken argument that the district court must incorporate these changes into the *revised guidelines range*. The district court considered (and rejected) that argument. He did not argue that the court should consider these intervening changes when deciding how to exercise its *discretionary* power to reduce his sentence.

Besides, I read the district court's decision to have rejected any implicit argument that the court should have relied on the legal changes—or on his post-sentencing conduct in prison—to reduce his sentence as a discretionary matter. The district court acknowledged Alejandro's claims that he would no longer qualify as a career-offender and that he had taken many classes in prison. Op., R.360, PageID 2835. But it held that the 420-month sentence (a 33-month upward variance) remained appropriate after "having given a thorough renewed consideration" of the § 3553(a) factors. *Id.*, PageID 2836–37. Its opinion also explained why: because of Alejandro's "lengthy and increasingly serious criminal history and the serious nature of the conviction offenses[.]" *Id.*, PageID 2837. Alejandro's prior crimes placed him solidly within the highest criminal history level. And the crime spree at issue in this case started with armed robberies in

New Mexico, included giving drugs to a young girl, and ended with a dangerous encounter with the police.   Given that *Concepcion* says that a judge need not even expressly address a defendant's arguments (so long as it considered them), this analysis more than sufficed.  *See* 142 S. Ct. at 2404.   Perhaps I would have weighed the § 3553(a) factors differently if I were the district judge, but *Concepcion* does not permit us "to substitute [our] judgment for that of the sentencing court as to the appropriateness of a particular sentence."  *Id.* (citation omitted).

## B.  William

William's case is even easier.  As with Alejandro's motion, *Concepcion* required the district court first to recalculate William's guidelines range based only on the Fair Sentencing Act changes.  *See id.* at 2402 & n.6.  Here again, the district court relied on the fact that (or rather, our prior statement that) the parties agreed that the applicable range (without the § 924(c) conviction) changed from 140 to 175 months to 120 to 150 months.  Op., R.361, PageID 2845 (citing *Domenech III*, 819 F. App'x at 343).  Yet William has never tied this reduced range to the First Step Act or the Fair Sentencing Act's changes to *crack-cocaine* sentences.  Rather, the change resulted from Amendment 782, which reduced the base offense level for 100 to 400 kilograms of *marijuana* from 26 to 24.  Resp., R.348, PageID 2760 n.1.  *Concepcion* forecloses any reliance on this unrelated legal change to calculate the guidelines range, which likely should remain at 140 to 175 months.  *See* 142 S. Ct. at 2402 & n.6.  If these calculations are correct, which again I would think after *Concepcion* the district court must address on remand, William likewise requests a *downward* variance from his First Step Act guidelines range.

Regardless, even assuming a revised guidelines range of 180 to 210 months' imprisonment (with the § 924(c) conviction), the district court again committed no processing error at *Concepcion*'s second step by refusing to reduce William's 234-month sentence as a discretionary matter.   He identified his current guidelines range as 170 to 197 months' imprisonment based on a later amendment that would reduce his criminal history level.  Mem., R.339, PageID 2645.  Yet he made this argument in support of his claim that the district court *must* use the current guidelines as "the appropriate starting point for [his] sentence."  *Id.*   The court properly rejected this argument, under *Concepcion*.   Op., R.361, PageID 2847; *see Concepcion*, 142 S. Ct. at 2402 n.6.

And again, I read the district court's decision to have rejected any implicit argument that it should rely on these legal changes to reduce William's sentence as a discretionary matter. As with Alejandro, the court acknowledged William's arguments but added that a "renewed consideration of the sentencing factors set forth in § 3553(a)" justified the same sentence. Op., R.361, PageID 2846–47. Unlike with Alejandro, the court had *already* gone through this § 3553(a) balancing process when denying William a reduced sentence based on Amendment 782. And we had already upheld the court's view that a "234-month sentence is still appropriate after the Guidelines were amended for the same reasons that it was before—namely, [William's] violent criminal history and his continued behavioral problems while incarcerated." *Domenech II*, 675 F. App'x at 525. I fail to see how the rationale that we accepted then somehow does not suffice now.

\* \* \*

In the end, the district court acknowledged that it was permitted to rely on intervening legal and factual changes. But it decided that the brothers' sentences should remain the same. The court's approach comported with *Concepcion* because that opinion gave it "broad discretion" to decide on the propriety of a sentence reduction. 142 S. Ct. at 2404. My colleagues' approach, by contrast, departs from *Concepcion* because that case forecloses their "overly searching" appellate review. *Id.* Mindful of the First Step Act's command that it does not "require a court to reduce any sentence," I would affirm. § 404(c), 132 Stat. at 5222. So I must respectfully dissent.